# CLARK v. HERINGTON.

ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

No. 223. Submitted April 14, 1902.—Decided June 2, 1902.

While the two statutes making the Union Pacific Railroad grants did not double the price of the even numbered sections within the place limits, yet that was done by the act of March 6, 1868, c. 20, 15 Stat. 39, and the even numbered sections within the place limits were from that time not open to selection as indemnity lands.

The act of Congress provides in terms that the sections of land should be subject to entry only under the homestead and preëmption laws, and the Land Department had no power to turn one of those sections over to a railroad company.

No title to indemnity lands is vested until an approved selection has been made; up to which time Congress has full power to deal with lands in the indemnity limits as it sees fit.

This is not an action to recover the possession of land, or to quiet title thereto; but it is clearly a matter of ordinary judicial cognizance, not excluded therefrom.

The contention that plaintiff in error is an innocent purchaser for value was not set up as a defence in the state courts.

On May 20, 1899, Monroe D. Herington, the defendant in error, recovered a judgment in the District Court of Labette County, Kansas, against Lee Clark, for the sum of $3032.28, which judgment was affirmed by the Supreme Court of that State on November 10, 1900. Thereupon the case was brought here on writ of error.

The facts are these: The action was one to recover damages for breach of warranty in the conveyance of a part of section 22, township 15, range 5, in Morris County, Kansas. The tract was outside the place and within the indemnity limits of the land grant made July 26, 1866, 14 Stat. 289, c. 270, to the Union Pacific Railroad Company, Southern Branch, a corporation whose name was subsequently changed to Missouri, Kansas and Texas Railroad Company. The railroad company duly constructed its road, and, failing to obtain within the place limits the full quota of lands granted to it, selected, on October 22,

1877, the tract in controversy among others in lieu thereof. At the time of such selection the tract was unimproved and without actual occupation. The selection was approved by the Commissioner of the General Land Office, but no patent was issued. On September 5, 1884, the railroad company conveyed the land to Lee Clark. He conveyed by warranty deed. Herington is a subsequent grantee in the chain of title, and is also the assignee from Clark's immediate grantee of all his rights under Clark's deed, including the right to recover damages for any breach of the covenants therein contained.

The tract was in an even-numbered section and within the place limits of the grant, made by acts of Congress of date July 1, 1862, 12 Stat. 489, c. 120, and July 2, 1864, 13 Stat. 356, c. 216, to the Union Pacific Railroad Company, Eastern Division.

On July 21, 1886, the selection by the Missouri, Kansas and Texas Railroad Company was canceled by order of the Commissioner of the General Land Office. Notice of this order was given to the railroad company, as also time to appeal therefrom, but no appeal was ever taken. On July 28, 1888, E. M. Cox, who had, on July 31, 1886, taken forcible possession of the land, filed his declaratory statement, claiming settlement. On July 26, 1889, he made final proof, paid the government price and received his patent certificate. Thereafter on October 15, 1890, a patent was issued to him.

*Mr. James Hagerman, Mr. T. N. Sedgwick* and *Mr. J. M. Bryson* for plaintiff in error.

*Mr. John H. Mahan* for defendant in error.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The paramount Federal question is whether the Missouri, Kansas and Texas Railroad Company was authorized to select as indemnity lands in satisfaction of its grant any even-numbered sections within the place limits of the prior grant to the Union

Pacific Railroad Company. Upon this question *United States* v. *Missouri &c. Railway*, 141 U. S. 358, is cited. The railway company, defendant in that case, is the successor in interest of the Missouri, Kansas and Texas Railroad Company. The act making its land grant is the one referred to in the foregoing statement of facts, as made July 26, 1866. 14 Stat. 289, c. 270. It claimed under the authority of that act the right to take as indemnity lands even-numbered sections within the place limits of what is known as the Leavenworth road, in whose benefit a grant was made March 3, 1863. 12 Stat. 772. The court held against this claim, saying (p. 370):

"Now, it is clear that the *even*-numbered sections, within the place limits of the Leavenworth road, were reserved by the act of 1863, for purposes distinctly declared by Congress, and which might be wholly defeated if the Missouri-Kansas company were permitted to take them as indemnity lands under the act of 1866. The requirement in the second section of the act of 1863, that the 'reserved sections' which 'remained to the United States' within ten miles on each side of the Leavenworth road, 'shall not be sold for less than double the minimum price of the public lands when sold,' nor be subject to sale at private entry until they had been offered at public sale to the highest bidder, at or above the increased minimum price; the privilege given to actual *bona fide* settlers, under the preëmption and homestead laws, to purchase *those lands* at the increased minimum price, after due proof of settlement, improvement, cultivation and occupancy; and the right accorded to settlers on such sections under the homestead laws, improving, occupying and cultivating the same, to have patents for not exceeding eighty acres each, are inconsistent with the theory that the *even*-numbered sections, so remaining to the United States, within the place limits of the Leavenworth road could be taken as *indemnity* lands for a railroad corporation."

While the two statutes making the Union Pacific Railroad grants did not double the price of the even-numbered sections within the place limits, yet that was done by the act of March 6, 1868, 15 Stat. 39, c. 20, which in terms provided "that such sections shall be rated at two dollars and fifty cents per acre, and sub-

ject only to entry under those (the preëmption and homestead) laws." The even-numbered sections within the place limits of the Union Pacific Railroad grants were from that time therefore not open to selection as indemnity lands. It is true that this statute was ·not passed until after the grant to the Missouri, Kansas and Texas Railroad Company, nor until after it had filed its map of definite location with the Secretary of the Interior, which appears from an agreed statement of the facts to have been on January 7, 1868, but it was passed before the completed construction of the railroad and long before the selection made by the company, and it is familiar law that no title to indemnity lands is vested until an approved selection has been made, and that up to such time Congress has full power to deal with lands in the indemnity limits as it sees fit. As said in *Kansas Pacific Railroad* v. *Atchison Railroad,* 112 U. S. 414, 421: " Until selection was made the title remained in the government, subject to its disposal at its pleasure." See, also, *Ryan* v. *Railroad Company,* 99 U. S. 382 ; *Grinnell* v. *Railroad Company,* 103 U. S. 739 ; *Cedar Rapids &c. Railroad* v. *Herring,* 110 U. S. 27 ; *St. Paul Railroad* v. *Winona Railroad,* 112 U. S. 720, 731 ; *Barney* v. *Winona &c. Railroad,* 117 U. S. 228, 232 ; *Sioux City Railroad* v. *Chicago Railway,* 117 U. S. 406, 408 ; *Wisconsin Railroad* v. *Price County,* 133 U. S. 496, 511 ; *United States* v. *Missouri &c. Railway,* 141 U. S. 358, 375 ; *Hewitt* v. *Schultz,* 180 U. S. 139 ; *Southern Pacific Railroad Company* v. *Bell,* 183 U. S. 675.

It is contended by plaintiff in error that the selection by the railroad company, when approved by the Land Department, operated to convey the title as effectively as would a patent to it therefor ; that the even-numbered sections within the place limits, although double minimum lands, were public lands and within the jurisdiction of the Land Department, and that hence the approval of the selection by the Land Department, even if erroneous, operated to.vest the title in the company. But this is a mistake. ·The act of Congress provided in terms that such sections should be subject only to entry under the homestead and preëmption laws, and the Land Department had no more power to turn one of those sections over to a railroad company

than it had to grant lands in a military or Indian reservation. While the lands were within the jurisdiction of the Land Department for some purposes they were not for all. The mode of their disposal was limited, and the Land Department had no authority to ignore that limited mode and dispose of them in any other way. This general doctrine as to the limitation of the powers of the Land Department has been affirmed by this court in many cases and under different circumstances. *Wilcox* v. *Jackson*, 13 Peters, 498; *United States* v. *Stone*, 2 Wall. 525.

It is further contended that it was not within the power of the Land Department to cancel the selection by the company, after the conveyance of the land by the company, without notice to all the transferees, and in support thereof, *Cornelius* v. *Kessel*, 128 U. S. 456; *Michigan Land & Lumber Co.* v. *Rust*, 168 U. S. 589, and *Hawley* v. *Diller*, 178 U. S. 476, are cited. It is undoubtedly true, as held in those cases and others, that while the Land Department has full jurisdiction over the disposition of public lands—a jurisdiction which may be exercised until the passing of the legal title by the issue of a patent or otherwise—yet such jurisdiction cannot be exercised so as to destroy any equitable rights without notice to the claimants thereof. While that is true, the courts are not thereby debarred from an inquiry into and a determination of the validity of any equitable title. They do not assume any direct appellate jurisdiction over the rulings of the Land Department, and they accept the findings of that department as conclusive upon questions of fact. *Shepley* v. *Cowan*, 91 U. S. 330; *Quinby* v. *Conlan*, 104 U. S. 420. But, notwithstanding this, prior to the issue of any patent a party may have rights in the land of one kind or another which courts will enforce. Thus, where the full equitable title to land has passed from the government to an individual, the land is subject to state taxation, although no patent has issued. *Carroll* v. *Safford*, 3 How. 441; *Witherspoon* v. *Duncan*, 4 Wall. 210. Where, prior to the issue of a patent, land in possession of an individual is sought to be charged with state taxes, he may contest in the courts the liability of the land therefor on the ground that full equitable title has not passed to him, or that something yet remains to be done before

the rights of the government are ended. *Railway Company* v. *Prescott*, 16 Wall. 603; *Railway Company* v. *McShane*, 22 Wall. 444.

Again, even before the acquiring of even an equitable title to the land as against the government, contracts made by actual settlers concerning their possessory rights and the title hoped to be acquired from the United States, may be valid as between the parties thereto, and enforced in the courts. *Lamb* v. *Davenport*, 18 Wall. 307; *Stark* v. *Starr*, 94 U. S. 477.

Again, it is a well-known fact that many agricultural lands and many mining claims are held by their owners with only final receipts from the government and without the issue of any patent. Yet the rights which accompany title are exercised by the parties and enforced by the courts.

It will be noticed that this is not an action to recover the possession of any land, or one to quiet the title thereto. It is simply an action to recover damages for the breach of a contract in respect to the land, and the decision, in no respect controlling the action of the officers of the Land Department, is simply a determination of the rights which the parties have acquired by proceeding in the Land Department. This is clearly a matter of ordinary judicial cognizance, and one which by no statute of Congress or rule of the common law is excluded from such cognizance. *Garland* v. *Wynn*, 20 How. 6; *Monroe Cattle Company* v. *Becker*, 147 U. S. 47, 57; *Turner* v. *Sawyer*, 150 U. S. 578.

A final contention in this matter is that the plaintiff in error is an innocent purchaser for value, and that, therefore, he and his grantees are entitled to be protected in their title by virtue of the act of March 3, 1887, 24 Stat. 556, c. 376, and March 2, 1896, 29 Stat. 42, c. 39. It is a sufficient answer to this contention that this defence was not set up in the state courts, and that it does not appear anywhere in the record that Clark, to whom the railroad company conveyed, or any subsequent grantee in the chain of title, was a citizen of the United States or had declared his intention to become a citizen, and hence the act of 1887, which purports to confirm alone the titles of citizens or those who have declared their intention to become citizens, has no

application; that the act of 1896 also has no application because that refers only to cases of lands patented or certified, and the confirmations of lands acquired by deed or contract from the party holding the patent or certificate, and here the railroad company never received any patent or certificate. In addition, prior to the passage of the act, a patent had been issued to Cox, and his title thus fully confirmed.

These considerations dispose of the only Federal question presented in the record, and, there appearing no error, the judgment of the Supreme Court of Kansas is

*Affirmed.*

Mr. Justice Gray took no part in the decision of this case.