## UNITED STATES v. CONKLIN et al.
### No. 254.

District Court, D. Montana.
Jan. 24, 1944.

John B. Tansil, U. S. Dist. Atty., of Billings, Mont., and R. Lewis Brown, Asst. U. S. Dist. Atty., of Butte, Mont., for plaintiff.

Jess L. Angstman, of Havre, Mont., for defendants.

PRAY, District Judge.

This action was brought to cancel and annul certain patents to land described in the complaint and issued by plaintiff to Harry E. Conklin, a defendant herein, and to set aside a deed from him to Ida M. Conklin, his wife, for said land. The complaint alleges that Harry E. Conklin fraudulently represented that he was a citizen of the United States, when as a fact he was a citizen of Canada, in order to obtain the aforesaid patents.

After commencement, and during pendency, of this action Harry E. Conklin died, and Mabel Anderson, a daughter, and John T. Earll, as guardian ad litem of Joyce Conklin, minor, were added as parties defendant with Ida M. Conklin.

The answer of Harry E. Conklin alleges that he did not knowingly defraud the government in obtaining said patents, and that Ida M. Conklin was a bona fide purchaser for value of the land without knowledge of any fraudulent inception of the patents; however, his counsel, in the brief, admits "that the evidence is sufficient to indicate that the patents secured to the land described in plaintiff's complaint were secured fraudulently by Harry E. Conklin."

There seems to be no doubt that fraud on the part of Harry E. Conklin has been proven as alleged in the complaint. The only question remaining is whether Ida M. Conklin, his wife, was a bona fide purchaser for value without knowledge of the fraud.

Ordinarily under the state of facts established here plaintiff would be entitled to a cancellation of the patents. It was judicially determined that Harry E. Conklin was a citizen of Canada and not of the United States, at the time the patents in question were issued. Counsel for plaintiff admits that Ida M. Conklin has a valid defense, if sustained by proof, citing United States v. Calcasieu Timber Co., 5 Cir., 236 F. 196.

In a case of this kind the general rule seems to be that transactions between husband and wife will be subject to close scrutiny. Counsel for plaintiff asserts that under certain circumstances, leaving the inference that this is one of them, the defense of being a bona fide purchaser for value is not available, citing McClure v. United States, 9 Cir., 187 F. 265 and Clark v. Herington, 186 U.S. 206, 22 S.Ct. 872, 46 L.Ed. 1128. The court has examined the cases cited and also a companion case, McLeod v. United States, 9 Cir., 187 F. 261, and seriously doubts their applicability to the facts in the instant case. There a patent was issued to a fictitious person and in legal effect was declared to be no more than a declaration that the Government thereby conveyed the property in question to no one, and that no one could derive any right under a conveyance in the name of a fictitious patentee.

The court has also considered Clark v. Herington, 186 U.S. 206, 22 S.Ct. 872, 46 L.Ed. 1128, which counsel contends is an authority indicating that the defense of being an innocent purchaser for value is not available to defendant who was not a citizen of the United States. This case arose under special remedial acts of Congress relating to railroad land grants, and the court would have to hear a much stronger argument than counsel has thus far presented, or the court's investigation has disclosed, before holding that this, and other decisions to be found of similar import, had any application to the facts presented here. The statutes especially in point in such cases, are those of March 3rd, 1887, 24 Stat. 556 to 558, inc., C. 376, U.S.C.A. Title 43, Sec. 894 to 899 inc., and March 2, 1896, 29 Stat. 42, C. 39, U. S.C.A. Title 43, Sections 900, 901, 902. Sections 894 to 899, inc., are modified or supplemented by Sec. 900 and by Sec. 903, the latter reading as follows: "The provision of section 888 and all statutes amendatory thereof or supplementary thereto, including sections 894 to 899, inclusive, as modified or supplemented by sections 900, 901 and 902, shall apply to grants of land in aid of the construction of wagon roads."

Under the amendatory and supplemental acts of Congress of March 2, 1896, "bona fide purchasers for value of such lands as have been patented to the railroad companies by the United States are confirmed in their purchases, even though they be

502

aliens." United States v. Southern Pac. R. Co., C.C., 88 F. 832, 840. The court further said, in respect to railroad land grant Act of 1887, quoting Attorney General Garland: "the whole scope of the law, from the second to the sixth section * * * is remedial. Its intent is to relieve from loss settlers and bona fide purchasers, who, through the erroneous or wrongful disposition of the lands in the grants, by the officers of the government or by the railroads, have lost their rights or acquired equities, which in justice should be recognized. * * * The whole remedial part of the law was passed with recognition of the fact that the railroad companies had sold lands to which they had no just claims."

Counsel have cited a long line of authorities to show that if the grantee had notice of the facts constituting the fraud the deed can be cancelled as well as the patents, and that the burden is upon her to establish her defense in that respect. Does the evidence show that the defendant had knowledge of the material facts constituting the fraud, or had sufficient knowledge to require an investigation or inquiry on her part before becoming a purchaser of the land which had been obtained by means of a fraudulent transaction. Where circumstances of a questionable nature, creating a suspicion of fraud, come to the attention of one whose duty it is to investigate, and where, if inquiry were made, the facts constituting the fraud would be disclosed, and such person fails to make such inquiry, the law charges him with full knowledge of whatever facts pertaining to the fraud would have been discovered.

The duty of inquiry in a proper case is covered by a number of decisions in harmony with the one cited by counsel, which is United States v. Krueger, 8 Cir., 228 F. 97, 103, reading as follows: "Whatever is notice enough to excite attention and put the party on his guard and call for inquiry is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it. * * * The presumption is that if the party affected by any fraudulent transaction or management might, with ordinary care and attention, have seasonably detected it, he seasonably had actual knowledge of it."

Has defendant sustained the burden of proof by showing that at the time she received the deed from her husband she was an innocent purchaser for value and without notice of the fraud resorted to by her husband in obtaining the patents; and another question, were the circumstances shown likely to create in her mind a suspicion of fraud, and if so, could they be deemed sufficient for the court to hold,. under the rules set forth and the evidence, that the means were thereby available to her of readily and seasonably acquiring actual knowledge. It took the government many years to unearth the fraud. Conklin was well entrenched, posing as an American citizen, holding several public offices at different times, and voting and taking part in elections.

The evidence shows that the defendant emigrated to Canada with her parents when she was about 12 years of age and there met the defendant Harry E. Conklin, and that she married the latter when she was only 15 years old. Sometime during that period, or before, Conklin had acquired land in Canada and had become a naturalized citizen of that country and a British subject. Did her close association with defendant Conklin, notwithstanding her extreme youth, enable her to know and understand that the person she married at 15 was a Canadian citizen and had homesteaded in Canada. But again, he claimed to her that he was a citizen of this country, and voted and held public office —was a United States Commissioner,. Census Enumerator, Notary Public and Assistant Postmaster. If she ever had any suspicion that her husband was not a citizen and therefore not qualified to take a homestead under the laws of the United States, were not the circumstances here sufficient to allay any such suspicion of his lack of citizenship, and do they not in some measure corroborate her statement that she could have no doubt as to his citizenship; that as the years rolled by—nine after acquiring title and before deeding the land to her—and he continued. to perform duties and assume responsibilities of American citizenship, in addition to his claim to such status, should the court now hold, after the lapse of so many years without any question being raised as to validity of title, that she must have had sufficient knowledge or at least suspicion of her husband's fraudulent conduct to charge her with the duty of further in-

quiry. She may have known but we can not look into her mind and so determine. Her statement under oath stands without contradiction. The circumstances of her extreme youth when some of the acts pertaining to the fraud were perpetrated by her husband lend little support to the charge of guilty knowledge. He played the role of a citizen so well that he eluded detection for about 20 years, therefore, does it not seem more than probable that his wife, with whom he lived for 35 years, shared the belief with federal and state officers and the public generally that he was a citizen of the United States. Is it not more than probable that he would keep the knowledge, or even suspicion, of his false swearing from his wife and daughters—such would be the usual course in a family where mutual respect and confidence were to be maintained—and there is nothing in the evidence to show that this family presented an exception.

The court is therefore of the opinion that the defendant, with the help of existing favorable conditions, has sustained the burden of proof and is therefore entitled to a decision in her favor, the court thereby refusing cancellation of the patents and deed. But the proof establishes the fact that the plaintiff was defrauded in issuing the patents, and that brings up for consideration the second cause of action in the complaint, wherein recovery of the value of the land is sought and alleged to be the sum of $2,500. On this phase of the case the briefs and arguments of counsel have little to offer. Apparently the law and the facts do not justify the court in giving further consideration to this cause of action, although the proof establishes the fact that the consideration for the conveyance of Conklin to his wife was $1,600, and there is authority for the acceptance of this sum as the value of the land. Southern Pac. R. Co. v. United States, 200 U.S. 341, 26 S.Ct. 296, 50 L.Ed. 507. But it does not appear that an administrator was appointed and named herein as a party to this cause presumably because there was no property found subject to execution, consequently the court will have to hold that no judgment can be entered on the second cause of action, to which the plaintiff would otherwise be entitled. In compliance with the rule, findings and conclusions, and form of judg-ment may be submitted. Each side will pay its own costs.