# UNITED STATES *v.* COLTON MARBLE AND LIME COMPANY.

# UNITED STATES *v.* SOUTHERN PACIFIC RAILROAD COMPANY.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF CALIFORNIA.

Nos. 862, 863, Argued November 9, 10, 1892. Decided December 12, 1892.

The proviso in the act of March 3, 1871, 16 Stat. 573, c. 122, granting lands in aid of the construction of the Southern Pacific Railroad, that the grant should " in no way affect or impair the rights, present or prospective, of the Atlantic and Pacific Railroad Company," operated to exempt the indemnity lands of the Atlantic and Pacific Company from the grant to the Southern Pacific Company.

THESE cases were similar in many respects to those of *The United States* v. *The Southern Pacific Railroad Company et al.*, just decided. The lands involved were within the granted limits of the Southern Pacific Railroad Company, and the indemnity limits of the Atlantic and Pacific Railroad Company, and the contention on the part of the government was, that because they were within such indemnity limits they were not of the lands granted or intended to be granted to the Southern Pacific Company. In the first, the defendants claimed under the Southern Pacific Railroad Company, and were charged to be committing trespasses upon the lands, and the relief sought was, as in the two prior cases, to quiet the title of the plaintiff and to restrain the trespasses. In the second, a patent had been issued, and the legal title conveyed to the railroad company, and the relief sought was the cancellation of that patent, and a decree establishing the title of the government. In this case there was a further contention on the part of the government, and that was that the lands were *sub judice* at the time of the definite location of the Southern Pacific Company's road, inasmuch as they were within the exterior boundaries of a Mexican land grant known as the ·

Rancho San José, as those boundaries were marked on the surface of the ground by one of two official surveys, the accuracy of neither of which had then been determined. Decrees were entered below in favor of the defendants, dismissing the bills; from which decrees the government appealed to this court. See 39 Fed. Rep. 132; 40 Fed. Rep. 611; 45 Fed. Rep. 596; 46 Fed. Rep. 683.

*Mr. Assistant Attorney General Maury* for appellant.

*Mr. James C. Carter* for appellees.

These cases were argued with the preceding case, (Nos. 921, 922.) The argument of counsel on both sides is reported in full in that case, both the parts relating to the special question considered by the court in this case, and the other questions, involved in all the cases. Briefs, entitled in all the cases, were filed by *Mr. George W. Merrill, Mr. G. Wiley Wells* and *Mr. Daniel L. Russell,* on behalf of Joseph Hinkell, claiming adversely to the Southern Pacific Company; and *Mr. J. A. Anderson,* on behalf of several appellees in No. 863, submitted on *Mr. Carter's* brief.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The ordinary rule with respect to lands within indemnity limits is, that no title passes until selection. Where, as here, the deficiency within the granted limits is so great that all the indemnity lands will not make good the loss, it has been held, in a contest between two railroad companies, that no formal selection was necessary to give them to the one having the older grant, as against the other company. *St. Paul & Pacific Railroad* v. *Northern Pacific Railroad,* 139 U. S. 1. And if the Atlantic and Pacific Company had constructed its road, it would be difficult in the light of that decision to avoid the conclusion that all the lands within the indemnity limits passed to that company. But this case does not rest upon that proposition. One thing which distinguishes the grant of 1871 to the Southern Pacific Railroad Company from most,

if not all other, land grants is the proviso somewhat considered in the opinion in the former cases, and which reads: "*Provided, however,* That this section shall in no way affect or impair the rights, present or prospective, of ·the Atlantic and Pacific Railroad Company, or any other railroad company."

What is the significance of this proviso? Without it, certainly, the Southern Pacific, its grant being of later date, would be postponed to the Atlantic and Pacific; and on the filing by each company of a map of definite location, the title to the lands within the granted limits would vest in the Atlantic and Pacific Company, to the total and absolute exclusion of all claims on the part of the Southern Pacific. The proviso, therefore, was without significance, in respect to such lands. It in no manner strengthened the title of the Atlantic and Pacific, and took nothing away from the Southern Pacific. Yet it cannot be supposed that this proviso was meaningless, and that Congress intended nothing by it. Carefully inserted, in a way to distinguish this grant from ordinary later and conflicting grants, it must be held that Congress meant by it to impose limitations and restrictions different from those generally imposed in such cases, and it in substance declared that the Southern Pacific Company should not in any event take lands to which any other company had at the time a present or prospective right. As it could have no effect upon the lands within the granted limits, it must have been intended to have some effect upon those within the indemnity limits, they being the only lands upon which it could operate.

What were the prospective rights of the Atlantic and Pacific Company? Of course it could not be known at the time of the passage of the later act exactly where the lines of the two companies would be located, and where the point of crossing would be. Neither could it then be known that there would be any deficiency in the granted lands at the point of crossing, or that, if such deficiency existed, it would require all the indemnity lands to make good the loss. It might well be assumed that very likely the Atlantic and

Pacific Company would be called upon to select from the indemnity lands a portion sufficient to make good the deficiency, in the granted limits. That right of selection was a prospective right, and if it was to be fully exercised, no adverse title could be created to any lands within the indemnity limits. Suppose, for instance, it should turn out that only half of the indemnity lands were necessary to make good the deficiency, and that one-half of such lands were well watered and valuable, while the remainder were arid and comparatively valueless, obviously the right of selection would be seriously impaired if it were limited to only the arid and valueless tracts. In fact, every withdrawal of lands from the aggregate of those from which selection could be made would more or less impair the value of the right of selection. The only way in which force can be given to this proviso is to hold that the indemnity lands of the Atlantic and Pacific were exempted from the grant to the Southern Pacific, for, if not exempted, the former company's prospective right of selection would be to that extent impaired. It must be borne in mind that these lands were in the granted limits of the Southern Pacific, and that they are not lands in respect to which that company would have a right of selection, and might defer the exercise of that right until such time as suited it. Being within the granted limits of the Southern Pacific, all its rights thereto vested at once, at the time of the filing of the map of definite location, and were not and could not be added to after that time; everything it could have in those lands it had then, and at that time there was an existing prospective right on the part of the Atlantic and Pacific Company to make a selection. That prospective right would be impaired by the transfer of the title of a single tract to the Southern Pacific. Hence, it follows that the title to none of these indemnity lands passed or could pass to the Southern Pacific Company.

In this aspect of the case it becomes unnecessary to inquire whether the lands described in the second case were *sub judice* or not. If they were *sub judice*, they could not pass to either company; and if they were not, the Atlantic and

Pacific's prospective right of selection prevented the passing of title to the Southern Pacific.

*The decrees in both cases will be reversed, and the cases remanded with instructions to enter decrees in favor of the government for the relief sought.*

. MR. JUSTICE FIELD, (with whom concurred MR. JUSTICE GRAY,) dissenting.

In these cases I dissent from the judgment of the court equally as from that in the cases just decided. It is now held that not only the lands within the granted limits of the Atlantic and Pacific Railroad Company passed to that company beyond the power of Congress to assign any portion of them for the construction of the Southern Pacific Company, although no work was done by the former corporation, and the grant to it was forfeited, but the indemnity lands also. The objections urged to the judgment in the other cases just decided possess greater force in these cases, for indemnity lands do not vest in any company until they are selected. Even if the Atlantic and Pacific Railroad Company had built the road, it would have had no indemnity lands until selection was made; much less can it be held that title vested in that company before any attempt was made to exhaust the lands within the granted limits.

I think the judgment in these cases should also be affirmed, and I am authorized to state that MR. JUSTICE GRAY concurs with me in this dissent.