# SOUTHERN PACIFIC RAILROAD COMPANY *v.* UNITED STATES.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 190. Argued March 9, 10, 1903.—Decided April 6, 1903.

Under the act of March 3, 1871, c. 122, 16 Stat. 573, the rights of the Southern Pacific Railroad Company were subordinate to those of the Texas Pacific Railroad Company. When the Texas Pacific grant was

declared forfeited by the act of February 28, 1885, the forfeiture did·not vest the Southern Pacific with the lands forfeited, but the forfeiture enured to the benefit of the United States.

THE case is stated in the opinion of the court.

*Mr. Maxwell Evarts* and *Mr. L. E. Payson* for appellants.

*Mr. Special Attorney Joseph H. Call* for appellee.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill to quiet title brought by the United States against the plaintiff in error. It comes here by appeal from a decree of the United States Circuit Court of Appeals, 109 Fed. Rep. 913, affirming a decree of the Circuit Court, 94 Fed. Rep. 427, in favor of the United States. The United States claims under forfeiture of a grant made to the Texas Pacific Railroad Company in its charter, and the Southern Pacific Railroad Company under words in the same charter which are construed to make an incidental grant to it. The principal land in controversy is land within the place limits of the Southern Pacific under the said grant and within the twenty mile limit of the Texas Pacific, being land situated where the road of the former company and the contemplated track of the Texas Pacific met at Yuma on the Colorado River in the southeastern corner of California. The United States contends that this land was excepted from the Southern Pacific grant.

The charter is the act of March 3, 1871, c. 122, 16 Stat. 573. By § 9 it grants to the Texas Pacific by words in the present tense " ten alternate sections of land per mile on each side of said railroad in California, where the same shall not have been sold, reserved, or otherwise disposed of by the United States," etc. By § 12, " said company, within two years after the passage of this act, shall designate the general route of its said road, as near as may be, and shall file a map of the same in the Department of the Interior; and when the map is so filed, the Secretary of the Interior, immediately thereafter, shall cause the lands within forty miles on each side of said designated

route within the Territories, and twenty miles within the State of California, to be withdrawn from preëmption, private entry, and sale." The Texas Pacific filed its map of general route in August, 1871, and in October, 1871, the Secretary of the Interior withdrew the odd sections according to the statute, including the land in question.

By § 23 of this same charter, for the purpose of connecting the Texas Pacific Railroad with San Francisco, the Southern Pacific was authorized to construct a line to the Texas Pacific road at or near the Colorado River, " with the same rights, grants, and privileges, and subject to the same limitations," etc., as in the act of July 27, 1866, " *Provided, however,* That this section shall in no way. affect or impair the rights, present or prospective, of the Atlantic and Pacific Railroad Company or any other railroad company." It was decided in *United States* v. *Colton Marble and Lime Co.,* 146 U. S. 615, that this proviso excluded the indemnity lands of the Atlantic and Pacific road and that the Southern Pacific took nothing in them, even after a forfeiture of the Atlantic and Pacific grant. But it is said that the Atlantic and Pacific had filed a definite location, and it is contended on several grounds that there is not a similar exception in this case.

In the first place, it is denied that the Texas Pacific is included under the words last quoted : " or any other railroad company." But we think it too plain for extended argument that it is included by those words. It was called into being and was an " other railroad " at the moment when the proviso took effect. In fact, it was the only other railroad, so far as has been suggested to us, to which the words could apply. It received a grant for its main line, while that to the Southern Pacific was for a branch. By the contemplated junction of the latter with the former there would arise a conflict for which it was proper to provide, and natural to provide as the statute did.

Next it is said that the Texas Pacific had no prospective rights at the moment when the act was passed, and that is said to be the moment when her priorities were fixed. We cannot take the words of the proviso so narrowly. The Atlantic

and Pacific had not fixed its definite location when the act was
passed, and yet in the decision which we have cited its indem-
nity lands were held excepted from the Southern Pacific grant.
See *United States* v. *Southern Pacific R. R.*, 146 U. S. 570,
573 ; *Southern Pacific Railroad* v. *United States*, 183 U. S.
519, 522. As to the phrase "prospective rights," no doubt it
is inartificial. The adjective changes the very nature of the
substantive. A prospective right is not yet a right. It is only
an expectation having a certain intensity of reasonableness.
But it is plain, for instance, that when the lands were with-
drawn along the general route of the Texas Pacific under § 12,
that road had a prospective right to the whole of its place
lands which the Southern Pacific could not affect by anything
which it might do later. The statute is not governed by the
ordinary rule as to contemporaneous grants. The Southern
Pacific was not intended or allowed to interfere with what the
Texas Pacific might take.

The strength of the appellant's case is in a somewhat atten-
uated line of reasoning. The Texas Pacific act refers to the act
of July 27, 1866, for the rights conferred on the Southern Pa-
cific. c. 278, 14 Stat. 292. The last mentioned statute is an
act incorporating the Atlantic and Pacific Railroad Company.
By § 18 the Southern Pacific is authorized to connect with the
Atlantic and Pacific and is to have similar grants of land with
that company. By § 6 there is a provision for the withdrawal
of lands along the general route of the Atlantic and Pacific
somewhat like that which has been mentioned as contained in
§ 12 of the Texas Pacific charter. It may be argued that it is
implied by § 18 of the Atlantic and Pacific charter that there
is to be a similar withdrawal of the land there granted to the
Southern Pacific, and that this implied provision is carried over
by a further implication to the grant to the Southern Pacific
in § 23 of the Texas Pacific charter. The Southern Pacific
filed the location of its general route in April, 1871, before the
filing by the Texas Pacific, and as the grant to the Texas
Pacific by § 9 was only of lands not sold, reserved or otherwise
disposed of by the United States, it may be said that the South-
ern Pacific has got a preference, much as the Texas Pacific

would have got one had the Southern Pacific done nothing before the Texas Pacific filed the location of its general route.

It must be admitted that if this argument is correct in its premises it puts a good deal of a strain on the proviso in favor of the prospective rights of the Texas Pacific.   For at the time when the Southern Pacific filed the location of its general route the prospective rights of the Texas Pacific were not determined otherwise than by its incorporation and the indications and promises in its charter.   Nevertheless we are of opinion that the argument cannot prevail.   It is only by a stretch that the provision for withdrawal of lands along the general route of the Atlantic and Pacific could be extended to the grant to the Southern Pacific in the Texas Pacific charter, and if it be so extended it is such a remote and probably unconsidered consequence of a reference to a reference that it cannot be allowed to outweigh the plain intent of the proviso in § 23, reinforced by the express arrangement for withdrawal in favor of the Texas Pacific in § 9.   Assuming that proviso to refer to the Texas Pacific, it indicates a plain intent to except from the grant to the Southern Pacific the land that in the natural course of events would be covered by the location of the former road. The conflict of interests naturally would be limited to the point of connection at Yuma.   There might be no other.   As to that land, the plain object of the proviso was to avoid a race of diligence by giving priority to the main line of the chartered road over the connecting branch.   Our decision is in accord with the settled construction and practice in the Department of the Interior following a ruling of the late Mr. Justice Lamar when Secretary of the Interior.   *Texas Pacific Railroad and Southern Pacific Railroad*, 4 L. D. 215.

The Texas Pacific grant was declared forfeited by the act of February 28, 1885, c. 265, 23 Stat. 337, and this forfeiture enured to the benefit of the United States.   *United States* v. *Southern Pacific Railroad*, 146 U. S. 570.   It is argued further, however, that if the Southern Pacific did not get the lands in question under its primary grant, it may take a part of them as indemnity lands.   It is said that the company has a right to take them for that purpose if the status of the lands at the time of

selection permits it. *Ryan* v. *Railroad Co.*, 99 U. S. 382. That contention seems to be disposed of by *Southern Pacific Railroad* v. *United States*, 168 U. S. 1, 47, 66, and the practice of the Land Department for many years has been inconsistent with it. *Southern Pacific Railroad* v. *Moore*, 11 L. D. 534; *Moore* v. *Kellogg*, 17 L. D. 391; *Smead* v. *Southern Pacific Railroad*, 29 L. D. 135. When it is decided that the company got no title to the land within its twenty mile limit, it would be contrary to the intimations of the cases to allow it to take the adjoining strip outside under a claim of indemnity. See *Bardon* v. *Northern Pacific Railroad*, 145 U. S. 535, 545; *Clark* v. *Herington*, 186 U. S. 206. It is not clear that the language of the statute does not forbid it. The indemnity to the Atlantic and Pacific, by § 3 of its charter adopted for the Southern Pacific by § 18, is to be other lands " in alternate sections, and designated by odd numbers, not more than ten miles beyond the limits of said alternate sections, and not including the reserved numbers." It might be argued that the last quoted words dispose of the matter. Without going into further reasons for our decision, we are of opinion that the decree appealed from was right. We deal only with the questions argued in this court.

*Decree affirmed.*


MR. JUSTICE BREWER and MR. JUSTICE DAY took no part in the decision of this case.