UNITED STATES v. SOUTHERN PAC. R. CO. et al.

(Circuit Court, S. D. California, S. D. January 21, 1907.)

No. 1,114.

PUBLIC LANDS—RAILROAD GRANTS—CONFLICTING GRANTS.

It having been determined by the Supreme Court that under Act July 27, 1866, 14 Stat. 292, c. 278, containing grants of lands within the state of California to both the Atlantic & Pacific Railroad Company and the Southern Pacific Railroad Company, each company took an undivided moiety of such lands as lay within the place limits of both grants, where they overlapped, and that the rights of the Southern Pacific Company under its grant were not affected by Act July 6, 1886, 24 Stat. 123, c. 637, forfeiting the grant to the Atlantic & Pacific Company, the right of the Southern Pacific Company to select lieu lands within the indemnity limits of its grant is not affected by the fact that such lands were within the primary limits of the grant to the Atlantic & Pacific Company and were restored to the public domain by said act of forfeiture.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Public Lands, §§ 274, 275.]

In Equity. Suit for adjustment of land grant.

Stipulation as to Evidence.

It is stipulated and agreed by and between the parties to this case, subject to all valid objections as to competency and relevancy, as follows:

Subdivision 1.

Item 1. That all acts of Congress and laws of the state of California, whether of public or private, general or special, nature, and all official acts and decisions of the Commissioner of the General Land Office and Secretary of Interior relating to the Southern Pacific Railroad Company or to the Atlantic & Pacific Railroad Company, or affecting the rights of either of said companies or of the United States, and all decisions of the Supreme Court of the United States reported in the United States Reports relating to or affecting the rights of either of said companies, in so far as relevant and material to the issues and controversies in this case, shall be deemed before this court for judicial notice.

Subdivision 2.

Item 2. The act of Congress approved on July 27, 1866, entitled "An act granting lands to aid in the construction of a railroad and telegraph line from the State of Missouri and Arkansas to the Pacific," is admitted in evidence, by reference to the same as printed in volume 14 of the United States Statutes at Large, pages 292 and following.

Item 3. Within due time, the Atlantic & Pacific Railroad Company, mentioned in the act of Congress referred to in item 2 hereof, assented to, and accepted the terms and conditions of, that act.

Item 4. The said Atlantic & Pacific Railroad Company filed maps designating its line of route with the Secretary of the Interior, which the Secretary of the Interior accepted as definitely locating the line of road, in sections and at dates as follows: From Springfield, Mo., to the west line of Missouri, on December 17, 1866; from the west line of Missouri to Kingfisher creek, I. T., on December 2, 1871; from Kingfisher creek to the eastern boundary of New Mexico on February 7, 1872; from the eastern boundary of New Mexico, to the western boundary of New Mexico on March 12, 1872; from the western boundary of New Mexico, through Arizona, to the east bank of Colorado river, near Needles, on March 12, 1872; from the last-mentioned point on the Colorado river to township 7 north, range 7 east, San Bernardino meridian, in California, on August 15, 1872; from the last-mentioned point (township 7 north, range 7 east) to the west line of Los Angeles county, in California, on

March 12, 1872; and from the last-mentioned point to the Pacific Coast, at San Buena Ventura, on August 15, 1872. As such maps were filed, as aforesaid, the Secretary of the Interior transmitted them to the Commissioner of the General Land Office, directing that they be given proper action, except that the said two maps filed on August 15, 1872, were transmitted by the Secretary of the Interior to the Commissioner on April 16, 1874, without express direction.

Item 5. Under direction of the Secretary of the Interior, the Commissioner of the General Land Office, on April 22, 1872, withdrew from pre-emption or homestead entry, private sale or location, all odd-numbered sections of public land in California lying within 20 miles and 30 miles on each side of the line of route designated upon the maps referred to in item 4 hereof as filed on March 12, 1872, which were not reserved, sold, granted, or otherwise appropriated, and were free from pre-emption, or other claims or rights, on March 12, 1872; and on November 23, 1874, the said Commissioner, under direction of the Secretary of the Interior, withdrew from sale or entry all odd-numbered sections of public land in California lying within 20 miles and 30 miles on each side of the line of route designated upon the maps referred to in item 4 hereof as filed on August 15, 1872. saying in his said order of withdrawal of November 23, 1874, that the rights of the Atlantic & Pacific Railroad Company must attach to the lands so withdrawn as of August 15, 1872.

Item 6. The withdrawals referred to in the next preceding paragraph hereof were accompanied by plats showing the line of route in California designated by the maps referred to in item 4 hereof, with 20-mile limit lines and 30-mile limit lines parallel with and on each side of the said line, as such limit lines were established by the Commissioner of the General Land Office under direction of the Secretary of the Interior.

Item 7. The Atlantic & Pacific Railroad Company did not construct any railroad in California.

Item 8. The act of Congress approved on July 6, 1886, entitled "An act to forfeit the lands granted to the Atlantic & Pacific Railroad Company to aid in the construction of its road, and for other purposes," is admitted in evidence, by reference to the same as printed in volume 24 of the United States Statutes at Large, pages 123 and following.

## Subdivision 3.

Item 9. The Southern Pacific Railroad Company, mentioned in the act of Congress referred to in item 2 hereof, was duly incorporated and organized as such under the laws of California on December 2, 1865, and the said company was thereby authorized and empowered to construct, own, maintain, and operate a railroad from the Bay of San Francisco, thence through the counties of San Francisco, Santa Clara, Monterey, San Luis Obispo, Tulare, and Los Angeles to the town of San Diego, thence easterly through San Diego county to the Colorado river.

Item 10. Within due time, the said Southern Pacific Railroad Company duly assented to, and accepted the terms and conditions of, the act of July 27, 1866, mentioned in item 2 hereof.

Item 11. On January 3, 1867, the said Southern Pacific Railroad Company filed with the Secretary of the Interior a map designating a line of general route of the railroad which it claimed the right and authority to construct under the provisions of the act of Congress of July 27, 1866, referred to in item 2 hereof; which line of route as designated on the said map commenced in the city of San Francisco and extended thence by way of San Jose, Gilroy, Tres Pinos, Alcalde, Huron, Goshen, and Mojave, to the Colorado river, at or near Needles.

Item 12. On January 3, 1867, the Secretary of the Interior received and filed the map referred to in item 11 hereof, and on that day delivered it to the Commissioner of the General Land Office, with directions that the said map be given appropriate official action.

Item 13. On March 22, 1867, the Commissioner of the General Land Office, acting under direction of the Secretary of the Interior's letter dated March 19, 1867, withdrew all odd-numbered sections of public land lying with-

in 20 miles and 30 miles on each side of the line of route shown on the map set forth in item 11 hereof from sale or location, pre e...ption, or homestead entry. The Secretary of the Interior in his above-mentioned letter of March 19, 1867, after directing the withdrawal, said: "I do not think it necessary at this time to pass upon the question as to whether this railroad company have adopted the route of any other railroad. Any indemnity of grant arising out of conflict of location under the first proviso in the third section of the Act, will be reserved for future consideration."

Item 14. The withdrawal referred to in the next preceding paragraph hereof was accompanied by a map showing the line of general route designated on the map set forth in item 11 hereof, with 20-mile limit lines and 30-mile limit lines parallel with and on each side of the said line of route, as such limit lines were established by the Commissioner of the General Land Office under direction of the Secretary of the Interior.

Item 15. On July 14, 1868, the Secretary of the Interior rendered a decision wherein he held that the Southern Pacific Railroad Company was not lawfully authorized to construct a railroad along the line of route designated upon the map of January 3, 1867, set forth in item 11 hereof, and ordered the withdrawals referred to in item 13 hereof set aside; on August 20, 1868, the Secretary of the Interior vacated the said order of July 14, 1868, as to all lands south of San José; on November 2, 1869, the Secretary of the Interior revoked the said order of August 20, 1868, and directed restoration of the lands withdrawn on March 22, 1867; on November 11, 1869, upon review, Secretary Cox affirmed his said order of November 2, 1869, and directed restoration of the said lands after 60 days' publication; on December 15, 1869, Secretary Cox suspended the said orders of restoration made on November 2, 1869, and November 11, 1869; and on July 26, 1870, the Secretary of the Interior directed that the original withdrawals of March, 1867, set forth in item 13 hereof, be respected.

Item 16. The act of Congress, approved on June 25, 1868, entitled "An act relative to filing reports of railroad companies," is admitted in evidence, by reference to the same as printed in volume 15 of the United States Statutes at Large, page 79.

Item 17. The act of Congress, approved on July 25, 1868, entitled "An act to extend the time for the construction of the Southern Pacific Railroad in the state of California," is admitted in evidence, by reference to the same as printed in volume 15 of the United States Statutes at Large, page 187.

Item 18. Prior to the year 1869 the San Francisco & San José Railroad Company was duly incorporated and organized under the laws of California, and thereby authorized to construct a railway from San Francisco to San José.

Item 19. During the year 1869 the said San Francisco & San José Railroad Company constructed and fully equipped a railroad from San Francisco to San José; during the same year the said Southern Pacific Railroad Company constructed and fully equipped a continuation of the said railroad from San José to Gilroy, a distance of 30.26 miles; and during the years 1869 and 1870 the said Southern Pacific Railroad Company constructed and fully equipped a further continuation of the said railroad from Gilroy to Tres Pinos, a distance of more than 20 miles. All of the said railroad from San Francisco to Tres Pinos was constructed upon, or as nearly as practicable upon, the line designated on the map of January 3, 1867, set forth in item 11 of this statement.

Item 20. By an act, approved on March 1, 1870, entitled "An act relating to certificates of incorporation," the Legislature of California provides as follows:

"Section 1. Any corporation now or hereafter organized under the laws of this state may amend its articles of association, or certificate of incorporation, by a majority vote of the board of directors, or trustees, and by a vote of written assent of the stockholders representing at least two-thirds of the capital stock of such corporation; and a copy of the said articles of association or certificate of incorporation as thus amended, duly certified to be correct by the president and secretary of the board of directors, or trustees of such corporation, shall be filed in the same office, or offices, where the original articles or certificate are required by law to be filed; and from the time of filing such

copy of the amended articles or certificate, such corporation shall have the same powers, and it and the stockholders thereof shall be thereafter subject to the same liabilities as if such amendment had been embraced in the original articles or certificate; provided, that the time of the existence of such corporation shall not be thereby extended beyond the time fixed in the original articles or certificate; and provided, further, that such original and amended articles or certificate shall, together, contain all the matters and things required by the law under which the original articles of association or certificate of incorporation were executed and filed; and provided further, that nothing herein contained shall be construed to cure or amend any defect existing in any original certificate of incorporation heretofore filed, by reason of the failure of such certificate to set forth matters required by law to make the same valid as a certificate of incorporation at the time of the filing thereof; also provided, that unless the vote or written assent of all the stockholders has been obtained, then a notice of the intention to make such amendment shall first be advertised for sixty days, in some newspaper in the town or county in which the principal place of business of said company is located; and the written protest of any one of said stockholders, or his duly authorized agent or attorney, whose assent has not been obtained, filed with the secretary of the said company, shall, unless withdrawn, be effectual to prevent the adoption of such amendment; provided, that nothing in this act shall be construed to authorize any corporation to diminish its capital stock.

"Sec. 2. This act shall take effect and be in force after its passage."

Item 21. By an act approved on April 4, 1870, entitled "An act to aid in giving effect to an act of Congress relating to the Southern Pacific Railroad Company," the Legislature of California enacted as follows:

"Section 1. Whereas, by the provisions of a certain act of Congress of the United States of America, entitled 'An act granting lands to aid in the construction of a railroad and telegraph line from San Francisco to the eastern line of the state of California,' approved July twenty-seventh, eighteen hundred and sixty-six, certain grants were made to, and certain rights, privileges, powers and authorities were vested in and conferred upon the Southern Pacific Railroad Company, a corporation duly organized and existing under the laws of the state of California; therefore, to enable the said company to more fully and completely comply with and perform the requirements, provisions and conditions of the said act of Congress, and all other acts of Congress now in force or which may hereafter be enacted, the state of California hereby consents to said act; and the said company, its successors and assigns, are hereby authorized and empowered to change the line of its railroad so as to reach the eastern boundary line of the state of California by such route as the company shall determine to be the most practicable, and to file new amendatory articles of association; and the right, power and privilege is hereby granted to, conferred upon and vested in them, to construct, maintain and operate, by steam or other power, the said railroad and telegraph line mentioned in, the said acts of Congress, hereby confirming to and vesting in the said company, its successors and assigns, all the rights, privileges, franchises, power and authority conferred upon, granted to or vested in said company by the act of Congress and any act of Congress which may be hereafter enacted.

"Sec. 2. This act shall take effect and be in force from and after its passage."

Item 22. The joint resolution of Congress, approved on July 28, 1870, entitled "Joint resolution concerning the Southern Pacific Railroad of California," is admitted in evidence, by reference to the same as printed in volume 16 of the United States Statutes at Large, page 382.

Item 23. On October 11, 1870, articles of association, amalgamation, and consolidation were made and entered into, in due conformity to and compliance with the laws of California, by and between the said Southern Pacific Railroad Company and San Francisco & San José Railroad Company whereby it was provided that the last-named company was amalgamated and consolidated with the said Southern Pacific Railroad Company. under the corporate name and style of "Southern Pacific Railroad Company," and that the said Southern Pacific Railroad Company thereby became the owner of all stock.

and property of the said San Francisco & San José Railroad Company; and the said articles further provided that the Southern Pacific Railroad Company was authorized to purchase, construct, maintain, own, and operate a railroad from the city of San Francisco through the counties of San Francisco, San Mateo, Santa Clara, Monterey, Freno, Tulare, Kern, San Bernardino, and San Diego to the Colorado river, and such branch line railroads as its board of directors might deem advantageous.

Item 24. The said Southern Pacific Railroad Company never constructed any railroad between Tres Pinos and Alcalde, a distance of about 50 miles.

Item 25. The said Southern Pacific Railroad Company completed the construction of, and fully equipped, a continuous line of railroad from Tres Pinos, by way of Huron, Goshen, and Mojave, to junction with the Atlantic & Pacific Railroad, on the Colorado river, at Needles, in several sections, on or about the following dates: The seventeenth section, 20.559 miles, from Tres Pinos (in N. E. ¼ of section 23, township 21 south, range 14 east, M. D. M.) to a point in the N. W. ¼ of section 11, township 20 south, range 17 east, M. D. M., on July 16, 1888; the ninth section, 20 miles, from the last-mentioned point to the N. E. ¼ of section 2, township 19 south, range 20 east, M. D. M., on January 9, 1877; the eighth section, 20 miles, from the last-mentioned point to Goshen (in section 19, township 18 south, range 24 east, M. D. M.), on December 11, 1876; the third section, 20 miles, from Goshen to the N. W. ¼ of section 30, township 21 south, range 25 east, M. D. M., on June 30, 1872; the fourth section, 20 miles, from the last-mentioned point to the N. W. ¼ of section 2, in township 25 south, range 25 east, M. D. M., on June 30, 1873; the fifth section, 20 miles, from the last-mentioned point to the N. E. ¼ of section 9, township 28 south, range 26 east, M. D. M., on June 13, 1874; the sixth section, 20 miles, from the last-mentioned point to the N. E. ¼ of section 5, township 30 south, range 29 east, M. D. M., on June 10, 1875; the seventh section, 20 miles, from the last-mentioned point to the S. E. ¼ of section 33, township 30 south, range 31 east, M. D. M., on January 13, 1876; the tenth section, 41.66 miles, from the last-mentioned point to Mojave (in the N. E. ¼ of section 17, township 11 north, range 12 west, S. B. M.), on December 17, 1877; the eleventh section, twelfth section, thirteenth section, fourteenth section, fifteenth section, and sixteenth section, in all 242,507 miles, connecting with the tenth section at Mojave, and extending thence to the Colorado river, at or near Needles, all constructed prior to April 19, 1883.

Item 26. Commissioners, duly appointed for that purpose, examined all of the said railroad from San José to Tres Pinos, and from Alcalde to the Colorado river, at or near Needles, after construction, respectively, of each of the said several sections thereof, and duly reported to the Secretary of the Interior that each of said sections had been completed in a good, substantial, and workmanlike manner, as near as may be along the line indicated on the map of January 3, 1867, set forth in item 11 of this stipulation, in all respects as required by the said act of July 27, 1866, and recommended that the same be accepted and approved; each of which reports was accompanied by a map of the survey, location, and profile of the section of road as constructed and reported upon, duly verified by the proper officers of the said Southern Pacific Railroad Company as a map and profile of such railroad as finally located and constructed and as correctly showing the location thereof, with the approval of the said commissioners indorsed upon the maps; and each of said reports and maps were accepted and approved by the Secretary of the Interior. Such reports were made and maps approved by the commissioners, and said reports and maps were received, filed, and approved by the Secretary of the Interior, on the following dates: First section (San José to Gilroy), report made and maps approved by the commissioners on October 29, 1870, report and map approved by the Secretary on January 20, 1871; second section (Gilroy to Tres Pinos), report made and maps approved by the commissioners on September 12, 1871, report and map approved by the Secretary on October 13, 1871; third section, report made and map approved by the commissioners on September 14, 1872, report and map approved by the Secretary on September 28, 1872; fourth section, report made and map approved by the commissioners on July 23, 1873, report and map approved by the Secretary on August 5, 1873; fifth section, report made and map approved by the com-

missioners on September 19, 1874, report and map approved by the Secretary on October 9, 1874; sixth section, report made and map approved by the commissioners on August 3, 1875, report and map approved by the Secretary on August 21, 1875; seventh section, report made and map approved by the commissioners on May 27, 1876, report and map approved by the Secretary on June 14, 1876; eighth section, report made and map approved by the commissioners on January 2, 1877, report and map approved by the Secretary on January 22, 1877; ninth section, report made and map approved by the commissioners on February 9, 1877, report and map approved by the Secretary on February 20, 1877; tenth section, report made and map approved by the commissioners on January 30, 1878, report and map approved by the Secretary on February 11, 1878; eleventh section, twelfth section, thirteenth section, fourteenth section, fifteenth section, and sixteenth section, reports made and maps approved by the commissioners on December 27, 1884, reports and maps received and filed by the Secretary on January 7, 1885, and approved by the Secretary on September —, 1897; seventeenth section, report made and map approved by the commissioners on April 2, 1889, report and map approved by the Secretary on October 23, 1889.

## Subdivision 4.

Item 27. The act of Congress approved on March 3, 1871, entitled "An act to incorporate the Texas Pacific Railroad Company, and to aid in the construction of its road, and for other purposes," is admitted in evidence by reference to the same as printed in volume 16 of the United States Statutes at Large, pages 573 and following.

Item 28. On May 16, 1871, the board of directors of the Southern Pacific Railroad Company adopted a resolution accepting the terms, conditions, and impositions of the act of Congress mentioned in the next preceding paragraph hereof, and directing that a copy thereof, certified under the seal of said company, be forwarded to and filed with the Secretary of the Interior; and on February 25, 1887, a copy of the said resolution, certified by the Secretary of the said company, under the corporate seal of the said company, was filed with the Secretary of the Interior.

Item 29. On April 3, 1871, the said Southern Pacific Railroad Company filed with the Secretary of the Interior a map designating the line of general route of the railroad which it claimed the right and authority to construct under the provisions of the said act of March 3, 1871; which map the Secretary of the Interior on that day received, filed, and delivered to the Commissioner of the General Land Office, with directions that the same be given appropriate action.

Item 30. On April 21, 1871, the Commissioner of the General Land Office, under direction of the Secretary of the Interior, withdrew all odd-numbered sections of public land lying within 20 miles and 30 miles on each side of the line of route shown on the map referred to in item 29 hereof from sale or location, pre-emption or homestead entry.

Item 31. The withdrawal referred to in item 30 hereof was accompanied by a plat showing the line of general route designated on the map set forth in item 29 of this stipulation, with 20-mile limit lines and 30-mile limit lines parallel with and on each side of the said line of route, as such limit lines were established by the Commissioner of the General Land Office under direction of the Secretary of the Interior.

Item 32. On April 15, 1871, the said Southern Pacific Railroad Company, duly conforming to and complying with the laws of California, amended its articles of incorporation as they then existed, so as to include therein a particular description of the line of route designated on the plat set forth in item 29 hereof.

Item 33. The said Southern Pacific Railroad Company completed the construction of, and fully equipped, a continuous railroad from Mojave, by way of Los Angeles, to the Colorado river, at or near Yuma, in several sections, along or near the line designated on the said general route map of April 3, 1871, all prior to December 6, 1877.

Item 34. Commissioners, duly appointed for that purpose, examined all of the said railroad after construction, respectively, of each of the several sec-

tions thereof, and duly reported to the Secretary of the Interior that each of said sections had been completed in a good, substantial, and workmanlike manner, in all respects as required by the said act of March 3, 1871, and recommended that the same be accepted and approved; each of which reports was accompanied by a map of the survey, location, and profile of the section of road as constructed and reported upon, duly verified by the proper officers of the said Southern Pacific Railroad Company as a map and profile of such railroad as finally located and constructed, and showing the correct location thereof, with the approval of the said commissioners indorsed upon the maps. The said reports were made and maps approved by the commissioners, and the said reports and maps were filed and approved by the Secretary of the Interior, and approved by the President of the United States, on the following dates: First section (from a point in the N. W. ¼ of section 3, township 2 north, range 15 west, S. B. M., to a point in the N. E. ¼ of section 27, township 1 south, range 9 west, S. B. M., a distance of 50 miles), report made and map approved by the commissioners on April 15, 1874, report and map filed and approved by the Secretary of the Interior on May 8, 1874, and report approved by the President of the United States on May 9, 1874; second section (from the said point in the N. E. ¼ of section 27, township 1 south, range 9 west, S. B. M., to a point in the S. W. ¼ of section 4, township 3 south, range 1 west, S. B. M., a distance of 50 miles), report made and map approved by the commissioners on October 21, 1875, report and map filed and approved by the Secretary on November 8, 1875, and report approved by the President on November 11, 1875; third section (from the said point in .the S. W. ¼ of section 4, township 3 south, range 1 west, S. B. M., to a point in the S. W. ¼ of section 24, township 5 south, range 7 east, S. B. M., a distance of 50 miles), report made and map approved by the commissioners on June 22, 1876, report and map filed and approved by the Secretary on July 10, 1876, and report approved by the President on July 21, 1876; fourth section (from the said point in the N. W. ¼ of section 3, township 2 north, range 15 west, S. B. M., to a point in the N. E. ¼ of section 17, township 11 north, range 12 west, S. B. M., a distance of 78.59 miles), report made and map approved by the commissioners on February 17, 1877, report and map filed and approved by the Secretary on March 1, 1877, and report approved by the President on March 2, 1877; fifth section (from the said point in the S. W. ¼ of section 24, township 5 south, range 7 east, S. B. M., to a point in the S. E. ¼ of section 26, township 16 south, range 22 east, on the Colorado river, a distance of 118.37 miles), report made and map approved by the commissioners on December 6, 1877, report and map filed and approved by the Secretary on January 19, 1878, and report approved by the President on January 23, 1878.

### Subdivision 5.

Item 35. The following lands described in Exhibit B attached to plaintiff's bill of complaint herein are within primary limits common to the land grants made by the said act of Congress of July 27, 1866, unto the Atlantic & Pacific Railroad Company and unto the Southern Pacific Railroad Company; for which reason the plaintiff's bill of complaint herein is dismissed, without prejudice, as to said lands, to wit, sections 1, 3, 5, N. ½ of N. E. ¼ of section 7, N. ½ of N. E. ¼, N. ½ of N. W. ¼ of section 9, N. ½, and N. ½ of S. ½ of section 11, all in township 6 north, range 10 west, San Bernardino base and meridian.

Item 36. All lands described in the bill of complaint herein other than the lands described in the next preceding paragraph hereof (item 35) are situated within primary limits of the land grant made unto the Atlantic & Pacific Railroad Company by the said act of Congress of July 27, 1866, and within indemnity limits of the land grant made unto the Southern Pacific Railroad Company by the same act.

Item 37. All lands described in Exhibit A attached to the bill of complaint herein were patented to the Southern Pacific Railroad Company by patent dated June 30, 1903, pursuant to said company's indemnity selection thereof made by list No. 94, filed on November 10, 1903.

Item 38. Exhibit A to the defendants' answer herein contains full, true, and

correct statements of all sales made by the Southern Pacific Railroad Company of lands described in Exhibit A and Exhibit B attached to the plaintiff's bill of complaint herein, and of all material particulars thereof. Each and all of such purchases were made for full value of the lands at times of sale, without notice or knowledge of any claims or rights of the United States in or to the lands purchased, by persons who in good faith believed they were purchasing from the said company a good and sufficient title, except in so far as the purchasers had constructive notice that the lands purchased were granted by the said act of July 27, 1866, unto the Atlantic & Pacific Railroad Company, and were not granted to and did not belong to the said Southern Pacific Railroad Company; and the title of each of such purchasers to the land so purchased was confirmed by the act of Congress approved March 2, 1896, published in volume 14, United States Statutes at Large, page 42.

Item 39. The official "Land Office Report, 1875," at page 409, contains the following: "Statement Exhibiting Land Concessions by Acts of Congress to States and Corporations, &c.": Act March 3, 1871, 16 Stat. 579; Southern Pacific Railroad Company, estimated quantity embraced within the 20 and 30 mile limits of the grant, 3,520,000 acres; estimated quantity which the company will receive from the grant, within the 20 and 30 mile limits thereof, 3,000,000 acres.

Item 40. It appears from the records of the United States Land Office for the Los Angeles District of California that within the indemnity limits of the grant made to the Southern Pacific Railroad Company by the act of Congress of March 3, 1871, there remains more than 50,000 acres of surveyed public land, vacant of record, embraced in odd-numbered sections, returned as agricultural in character, which have not been selected as indemnity by said company, not including any lands embraced within either the granted limits or indemnity limits of the grant to the Atlantic and Pacific Railroad Company made by the act of Congress of July 27, 1866, and not including any lands withdrawn for the Texas Pacific Railroad Company under the map of general route filed by said company in the year 1871 under said act of Congress of March 3, 1871.

### Subdivision 6.

Item 41. Either party to this suit may introduce further and additional testimony or other evidence at any time within 90 days from this date.

Dated and signed on December 7, 1904.

Joseph H. Call.<br>
Special Assistant U. S. Attorney.<br>
Wm. Singer, Jr.,<br>
Attorney for the Defendants.

Indorsed: No. 1,114. U. S. Circuit Court, Southern District of California, Southern Division, United States v. Southern Pacific Railroad Co. et al. Stipulation as to evidence. Filed Dec. 13, 1904. Wm. M. Van Dyke, Clerk; Chas. N. Williams, Deputy, Wm. Singer, Jr., No. 49 Second St., San Francisco, Cal., Atty. for Defendant.

The Attorney General and Joseph H. Call, U. S. Atty.
Wm. F. Herrin and Wm. Singer, Jr., for defendants.

ROSS, Circuit Judge. The facts of this case differ from those in the case of the United States v. Southern Pacific Railroad Company et al., numbered 1,196, just decided, 152 Fed. 314; for here the agreed statement of facts shows that all of the lands in controversy are within the primary limits of the grant made by Congress to the Atlantic & Pacific Railroad Company by its act of July 27, 1866, c. 278, 14 Stat. 292, and within the indemnity limits of the grant made to the defendant Southern Pacific Railroad Company by the same act. It is also stipulated by the respective parties that a certain portion of the lands described in Exhibit B. annexed to the bill were included in the final

decree entered in this court in the case between the same parties, here numbered 184, and which was affirmed by the Supreme Court in 168 U. S, 1, 18 Sup. Ct. 18, 42 L. Ed. 355, and "that all acts of Congress and laws of the state of California, whether of public or private, general or special, nature, and all official acts and decisions of the Commissioner of the General Land Office and Secretary of the Interior, relating to the Southern Pacific Railroad Company or to the Atlantic & Pacific Railroad Company, or affecting the rights of either of said companies or of the United States, and all decisions of the Supreme Court of the United States reported in the United States Reports relating to or affecting the rights of either of said companies, in so far as relevant and material to the issues and controversies in this case, shall be deemed before this court for judicial decision."

In deciding the case entitled "United States v. Southern Pacific Railroad Company et al.," and here numbered 600, this court was of the opinion that the decision of the Supreme Court in the cases of United States v. Southern Pacific Railroad Company, 146 U. S. 570, 13 Sup. Ct. 152, 36 L. Ed. 1091; United States v. Colton Marble & Lime Company, 146 U. S. 615, 13 Sup. Ct. 163, 36 L. Ed. 1104; United States v. Southern Pacific Railroad Company, 146 U. S. 570, 13 Sup. Ct. 152, 36 L. Ed. 1091, and Southern Pacific Railroad Company v. United States, 168 U. S. 1, 18 Sup. Ct. 18, 42 L. Ed. 355, determined that the Southern Pacific Company never acquired any interest or right in or to any of the odd-numbered sections of land embraced within the granted or indemnity limits of the Atlantic & Pacific Railroad Company, either by the grant contained in the act of July 27, 1866, c. 278, 14 Stat. 292, or in the joint resolution of Congress of June 28, 1870, 16 Stat. 382, or in the act of March 3, 1871, c. 122, 16 Stat. 573. United States v. Southern Pac. R. Co. (C. C.) 86 Fed. 962, 963.

In affirming the judgment of this court in that case, the Circuit Court of Appeals for this circuit took the same view of those decisions of the Supreme Court, saying, in its opinion:

"The scope of these decisions of the Supreme Court cannot be mistaken. They were intended to dispose of all the questions in issue, and make it perfectly clear that all the lands embraced within the primary and indemnity limits of the Atlantic & Pacific grant, between the Colorado river and San Buena Ventura, had been forfeited to the United States, and restored to the public domain, free from any claim whatever on the part of the Southern Pacific Railroad Company; and these decisions have been placed upon grounds that leave no room for the consideration of a claim of title based upon the theory that the Southern Pacific Company had acquired a right to the lands contemporaneously with the Atlantic & Pacific Company under section 18 of the act of July 27, 1866, c. 278, 14 Stat. 299." United States v. Southern Pacific Railroad Company, 98 Fed. 27, 39, 38 C. C. A. 619, 631.

But on appeal to the Supreme Court, that tribunal took a different view of its former decisions from that taken by the Circuit Court of Appeals and by this court in the case cited, and declared that:

"It was not adjudged in those cases either that the Southern Pacific had no title to any real estate by virtue of the act of 1866, or that, if there was any real estate to which it held any claim or right by virtue of that act, such claim was not of equal force with that of the Atlantic & Pacific. The general statement at the close of the quotation from 146 U. S. 607, 13 Sup. Ct.

160. 36 L. Ed. 1101, 'that the latter company has no title of any kind to those lands,' and the similar statement in paragraph 3 of the quotation from 168 U. S. 61, 18 Sup. Ct. 32, 42 L. Ed. 381, are to be taken as applicable only to the facts presented, and cannot be construed as announcing any determination as to matters and questions not appearing in the records. Of course, the decrees that were rendered in those cases are conclusive of the title to the property involved in them, no matter what claims or rights either party may have had and failed to produce, but, as to property which was not involved in those suits, they are conclusive only as to the matters which were actually litigated and determined." 183 U. S. 519, 533, 22 Sup. Ct. 154, 160 (46 L. Ed. 307).

Accordingly, and inasmuch as Congress had, by its act of July 6, 1886, c. 637, 24 Stat. 123, declared forfeited the lands granted to the Atlantic & Pacific Railroad Company within the limits of California, the Supreme Court, in the case last cited, held that the United States held "an equal undivided moiety in all the odd-numbered sections which lie within the conflicting place limits of the grant to the Atlantic & Pacific Company and of that made to the Southern Pacific Company by the act of July 27, 1866; and that the Southern Pacific Company holds the other undivided moiety thereof."

As it was thus authoritatively determined by the Supreme Court that the act of Congress forfeiting the lands granted to the Atlantic & Pacific Company did not affect the grant made by the act of July 27, 1866, to the Southern Pacific Company, in so far as it concerns the lands within the primary limits of that grant, I am unable to see any valid ground for holding that the forfeiture deprived the Southern Pacific Company of any indemnity lands covered by the same grant. There is but the one grant to the Southern Pacific Company made by the act of 1866, which embraces both classes of lands; that is to say, lands within its primary limits and lands within its indemnity limits. According to the decision of the Supreme Court in United States v. Southern Pacific Railroad Company, 183 U. S. 519, 22 Sup. Ct. 154, 46 L. Ed. 307, the act of July 27, 1866, gave to each of the railroad companies mentioned an undivided half of all of the odd-numbered sections falling within the primary limits of both grants, the half so granted to the Atlantic & Pacific Company afterwards reverting to the United States by virtue of the act of forfeiture. It is quite true, as suggested by counsel for the complainant, that, had the grant to the Atlantic & Pacific Company not been forfeited, it would have continued to hold its interest in the odd-numbered sections within its primary limits, and that, in that event, none of such odd-numbered sections would have been subject to selection by the Southern Pacific Company as indemnity lands; but, according to the ruling of the Supreme Court in 183 U. S. 519, 22 Sup. Ct. 154, 46 L. Ed. 307, that would only have been so for the reason that, in the event supposed, such odd-numbered sections would not have been public lands.

Applying the decision of the Supreme Court in the case last cited to the admitted facts in the present case, it seems to me to result, necessarily, that, except as to those of the lands in controversy that were covered by the final decree entered in the case numbered in this court 184, and affirmed by the Supreme Court in 168 U. S. 1, 18 Sup. Ct. 18, 42 L. Ed. 355, there must be judgment for the defendants; for holding,

as the Supreme Court did in the case reported in 183 U. S. 519, 22 Sup. Ct. 154, 46 L. Ed. 307, that the act forfeiting the grant to the Atlantic & Pacific Company did not affect the grant made to the Southern Pacific Company by the act of July 27, 1866, in so far as concerns the lands within the primary limits of that grant, I do not think I would be justified in holding that the forfeiture deprived that company of any indemnity lands, covered by the same grant, not included in any judgment heretofore entered.

I see nothing in the decision of the Supreme Court in the case of Southern Pacific Railroad Company v. United States, 189 U. S. 447, 23 Sup. Ct. 567, 47 L. Ed. 896, in conflict with this ruling. In that case it was held that the rights of the Southern Pacific Company under the act of March 3, 1871, c. 122, 16 Stat. 573, were subordinate to those granted by the same act to the Texas Pacific Railroad Company, the "plain intent" of which, said the court in its opinion, was "to except from the grant to the Southern Pacific the land that in the natural course of events would be covered by the location of the" road of the Texas Pacific Company. The court there further expressly declared that the act of March 3, 1871, "is not governed by the ordinary rule as to contemporaneous grants. The Southern Pacific was not intended or allowed to interfere with what the Texas Pacific might take." And having there determined that in respect to lands falling within the limits of both of those grants the Southern Pacific got no title by the act of March 3, 1871, to any of the land falling within its primary limits, it could not, for precisely the same reason, get any title to any land within the indemnity limits of that grant, for indemnity is allowed only to make good a loss or losses sustained by the grantee within the primary limits of its grant.

Counsel for the complainant is also mistaken in saying that the precise question presented in the present case was also decided by this court in case No. 878 (United States v. Southern Pac. R. Co. [C. C.] 117 Fed. 544). The facts upon which that case was decided were thus stated by the court:

"The agreed statement of facts shows that each of the separate and distinct tracts of the public lands forming the subject of the suit specifically described in Exhibit A annexed to the bill, and aggregating 30,067.79 acres, fell within the 30-mile limits of the Atlantic & Pacific grant, and, as I understand the evidence, none of them are embraced by the common-place limits of that grant and the grant made to the defendant railroad company by the same act of July 27, 1866, but do fall within the limits of the branch-line grant to that company. In the case of Southern Pac. R. Co. v. U. S., 183 U. S. 519, 22 Sup. Ct. 154, 46 L. Ed. 307, it was held that the United States, having, by the forfeiture act of July 6, 1886, become possessed of all the rights and interest of the Atlantic & Pacific Railroad Company in the grant made to it by the act of July 27, 1866, within the limits of California, had an equal undivided moiety in all the odd-numbered sections which lie within the conflicting place limits of that grant and of that made to the defendant Southern Pacific Railroad Company by the same act of July 27, 1866, by which the latter company acquired the other equal undivided moiety thereof. But that case left undisturbed the preceding decisions, by which it has been adjudged that none of the public lands within the 30-mile limits of the grant made by Congress on the 27th day of July, 1866, to the Atlantic & Pacific Railroad Company, ever passed to the defendant Southern Pacific Railroad Company by virtue of the grant made by Congress to that company by the joint resolution

of June 28, 1870, or by the act of March 3, 1871. U. S. v. Southern Pac. R. Co., 146 U. S. 570, 13 Sup. Ct. 152, 36 L. Ed. 1091; U. S. v. Colton Marble & Lime Co., 146 U. S. 615, 13 Sup. Ct. 163, 36 L. Ed. 1104; Southern Pac. R. Co. v. U. S., 168 U. S. 1, 18 Sup. Ct. 18, 42 L. Ed. 355; U. S. v. Southern Pac. R. Co. (C. C.) 86 Fed. 962; Southern Pac. R. Co v. U. S., 38 C. C. A. 619, 98 Fed. 27."

It will be thus seen that in making that decision the court did not have before it a case similar to that now presented, for there the lands in controversy were not within the common limits of the grants made by the act of July 27, 1866, to the Atlantic & Pacific and Southern Pacific Companies, but were within the primary limits of the Atlantic & Pacific grant, and within the limits of the branch line grant of the Southern Pacific Company, to wit, that of March 3, 1871.

There will be judgment for the complainant in respect to such of the lands here in controversy as were included in the decree entered in case No. 184 in this court, and in respect to all other lands embraced by the bill herein there will be judgment for the defendants.

A decree to that effect will be prepared and submitted to opposite counsel, and then to the court for signature.