470

GRAND RAPIDS & I. R. CO. v. BLANCH-
ARD et al.
No. 5261.

Circuit Court of Appeals, Sixth Circuit.
Feb. 7, 1930.

Knappen, Uhl & Bryant, of Grand Rapids, Mich., for appellant.

Edward J. Bowman, U. S. Atty., of Grand Rapids, Mich., for appellees.

Before HICKS and HICKENLOOPER, Circuit Judges, and KILLITS, District Judge.

KILLITS, District Judge.

This action was begun June 5, 1909, against the first nineteen persons named as appellees, to restrain the proving up of homestead entries, made by them respectively, upon tracts of land aggregating 2,861.44 acres in Michigan. Pending the action the several entrants made their proofs and the lands were patented by the government according to their respective entries. The cause was before the court below on the original bill, a supplement thereto, filed in 1913, setting up the granting of the patents referred to, praying for cancellation thereof, and a second supplemental bill filed in 1927, making for additional parties, the remaining appellees, as claimants by virtue of attempted transfers or otherwise. The cause was dismissed on motion, on the facts as pleaded in the bill and supplements, and this appeal follows.

Appellant and appellees alike rely on a decision of this court rendered in 1908, United States v. Grand Rapids & Indiana Railroad Co., 165 F. 297, 299. In May, 1855, the tracts herein involved, with those in controversy in that case, were "withdrawn from sale and withheld for Indian purposes," to meet requirements of a contemplated treaty with the Indians which was entered into July 31, following. The treaty, however, did not appropriate these tracts, others having been therein designated. In our decision in U. S. v. Grand Rapids & I. R. Co., supra, it was held that the reservation so made of these tracts continued in effect until September 10, 1856 (11 Stat. 629), when the treaty, which failed to include them, was promulgated by executive action. While the treaty was thus pending, an Act of Congress was approved (June 3, 1856, c. 44, 11 Stat. 21), granting lands to the state of Michigan to aid in the construction of a contemplated line of railroad which became thereafter the line of the appellant company, and proceedings were had, by legislation in Michigan and executive action, to clothe the appellant with title to the lands affected by the act. The earlier decision deals with the legislation which underlies the present action and travels a great distance along the line of facts and law with which we are presently engaged. Reference is made to the opinion therein for facts not herein stated.

The act of 1856 contained a reservation of, "any and all lands heretofore reserved to

the United States by any Act of Congress, or in any other manner, by competent authority, for the purpose of aiding in any object of internal improvement, or for any other purposes whatsoever." In the earlier case it was considered that the act operated in presenti, affecting only those lands which were open to immediate grant, entry or sale, wherefore the parcels, including those in question here, under the reservation, quoted above, were held to have been excluded; cases cited on page 301 of the opinion.

This conclusion followed, logically, the finding that the reservation continued until the treaty operated to lift it, and that that did not occur until after the Granting Act was approved.

In 1857, appellant filed its location map which fixed the place limits of its grant, and which extended beyond the acreage here contended for. These lands were then free of the reservation, although it had not been formally lifted by department action, and were tracts which but for the reservation would have gone directly to the appellant as of the date of the act. Appellant assumes that these circumstances brought them, ipso facto, under its grant. However, in United States v. Southern Pacific R. R. Co., 146 U. S. 570, 13 S. Ct. 152, 36 L. Ed. 1091, followed by Southern Pacific R. R. Co. v. United States, 168 U. S. 1, 18 S. Ct. 18, 42 L. Ed. 355, it was held that an act operating in presenti took effect when the location map was filed by relation as of the date of the Granting Act. It follows, therefore, that these lands, at all times thereafter, except from 1864 to 1874, for reasons later set forth, were unreservedly public domain, open to entry by any process, unless appellant took the proper steps to perfect a claim thereto. This the company attempted in 1873, by filing listings including them, under the erroneous impression that they passed directly by virtue of the act. This view was indeed entertained by the department which, in 1874, patented to appellant the lands involved in the earlier suit, and the company thereupon sold the latter to bona fide purchasers and settlers.

 Excluding the lands involved in both cases, when the company fixed the place limits of its grant, by the filing of its location map in 1857, there was a deficiency of more than one hundred thousand acres from the quantity the company would otherwise have received. This gave the company a claim for indemnity or lieu lands, if available free acreage could be found subject to such a claim. It was the presence of this claim, unsatisfied by any appropriate proceeding, which turned the decision in the earlier case to appellant. What had been conveyed to it in 1874, by patents improperly assumed to have been directed by the Granting Act, and for which the government demanded consideration in that action, appellant, defending therein, might have obtained by the exercise of its right to select the tracts as indemnity lands, to which the government would have undoubtedly acceded. This right to select, added to the special facts of the earlier case, led to the decision that the equities of that action were superior in the company. Certainly United States v. Grand Rapids & I. R. Co., supra, is not res judicata of the present controversy, for parties and complete states of fact differ, but, considering and deciding, as it does, certain contentions, identical in facts, law and application, with those in similar sequential position in this case, it should be followed in the present case on the principle of stare decisis. Therein, therefore, are found answers to all but the last of the propositions urged by appellant as controlling. The lands reserved and involved here, were at all times excluded from direct operation of the Granting Act, and no title thereto passed under or directly through the act by reason of either or both of the facts, (1) that after the reservation discontinued the company filed its map of location, or (2) that, assuming to follow the act, the company in 1873, listed the acreage here contended for. The effect of the decision was to justify the Secretary of the Interior in canceling, in 1909, that listing and in proclaiming the tracts to be part of the public domain, available for general disposition. Subsequent departmental consideration resulted in an overruling of the earlier holding approving the listings, in 1873, under the act, and ordering cancellation thereof, the order in that behalf being suspended pending the earlier case. When our decision was rendered late in 1908, the cancellation was made absolute and the lands here contended for were proclaimed to be open generally to entry, of which appellant had advance notice January 30, 1909, followed by a public notice out of the local land office February 5, 1909. Then existed, as had always been the case, upon a proper understanding of its position respecting this acreage, from the date of the filing of its location map in 1857, an opportunity to appellant to acquire title thereto by proceeding against them under its right to indemnity or lieu land.

██ It was not for the government to recognize this claim, sua sponte, it was for the appellant to press it by definite selection. In United States v. Colton Marble & Lime Co., 146 U. S. 615, 616, 13 S. Ct. 163, 164, 36 L. Ed. 1104, Justice Brewer says: "The ordinary rule with respect to lands within indemnity limits is that no title passes until selection." The circumstances now to be considered show that appellant was then bound to press its specific selections if it would perfect its claim, nevertheless it stood upon its erroneous belief, and held to that position through filing of its bill and to the present time, that a legal title came to it directly under the act by virtue of the filing of its location map. In 1864, these same tracts were again taken out of the free public domain for prospective Indian uses, and remained under such reservation until after appellant's ineffectual listing of them in 1873. The public notice referred to (dated February 5, 1909) proclaimed that these public lands were to be opened to public entry April 14, 1909, and notice was therein given "to all parties who have heretofore made applications for any of the lands, * * * that as their applications were made at a time when the lands were not subject to entry, such applications conferred no rights," and that, at the time mentioned, the lands "will be open for entry without regard to such applications." It does not appear that appellant, against a formal cancellation of its ineffective listings and its special and this public notice that the lands were open to all persons for entry, made any protests to the department or took any action on a tenable conception of its rights. All it did do, the effect of which will be soon be considered, was to file, April 1, 1909, a lis pendens notice, under provisions of Michigan law, with the appropriate local officer. On April 14, 1909, the several entrant appellees made homestead entries of the acreage involved, and May 30, 1909, public notice was given that the several entrants had "filed notice of intention to make Final Five Year Proof" before the proper authority on July 16, following. The bill herein was filed June 5, 1909, and then prayed for injunctive relief against the proving up by entrant appellees of their respective entries.

██ Judging from the averments in the bill concerning it, the notice lis pendens was in harmony with the position taken therein that, as averred in paragraph XXXVI, appellant, by virtue of the act and its proceedings thereunder, "became, and is now, fully vested with the legal title in fee to all the lands" in present controversy, "and without any further action by the government or by the state or by officers of either was and is entitled to have patents issued therefor as evidence of its title." The rule is that the office of the notice is limited to the facts set up in the bill, and to those issues which the bill attempts to raise or are necessarily implied from its allegations. We find, applying the decision in the earlier case and authorities now cited, that this suit was planted upon an entirely erroneous theory of the nature of appellant's rights; that there was nothing advised by this notice which prevented the acquisition, after it was filed, by entrant appellees of equities in the several tracts through their several homestead entries of April 14, 1909, and that these several equities became thereby superior to the right, always unexercised, in appellant to select the same lands to indemnify it for the deficiency in the direct application of its granting act. Thus, necessarily, we come to a negative answer to the last proposition in appellant's brief, that the "Bill of Complaint should be held to state a case for equitable relief upon the same grounds as controlled the former decision."

Appeal dismissed.