SOUTHERN PACIFIC RAILROAD COMPANY *v.* UNITED STATES.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 269. Argued April 30, 1913.—Decided May 26, 1913.

The Land Grant Adjustment Acts of 1887 and 1896 did not provide for any recovery of interest on amounts for which the railroad companies were required to account for lands erroneously patented to them and sold by them to *bona fide* settlers; and there was no liability for such interest until the determination of the amounts for which the companies were liable to account.

In view of the whole situation, and all the circumstances involved in the determination of the amounts for which the Southern Pacific Railroad Company was liable to account under the Land Grant Adjustment Acts, *held* that such company was not liable for interest until after the amount due from it to the Government had been liquidated, and should be computed only from the date of the commencement of the suit brought by the Government to recover the same.

187 Fed. Rep. 737, modified and affirmed.

THE facts, which involve the construction of the Land Grant Adjustment Acts and the liability of the Southern Pacific Railroad Company thereunder for interest on amounts received by it for land erroneously patented to it, and the date from which such interest should be computed, are stated in the opinion.

*Mr. Maxwell Evarts* for appellant:

The United States was not entitled to recover any interest upon the amounts found to be due to it from the railroad by reason of the sale to *bona fide* purchasers of land which had been erroneously patented to the Railroad Company.

Congress never had in mind in these *Bona Fide* Purchasers Acts anything more than to make the Government whole as if the erroneous patents had not been granted. The erroneous patents were no fault of the Railroad Company. It was only after years of litigation that the patents were held to be erroneous. At the time the lands were granted nobody conceived that the lands were improperly patented or that the Railroad Company was not entitled to them. The Railroad Company has been guilty of no wrong and the Government is not undertaking to punish it for anything which it has done. If there was any wrong committed by erroneously issuing the patents to the Railroad it was a wrong committed by the United States and not by the Railroad. The Government issued the patents, not the Railroad. See 19 Op. Atty. Gen. 68, 72; Cong. Rev., Vol. 28, p. 1936.

If the Government is entitled to interest it can only be (1) from the date of the suit, or (2) from the date when the purchasers from the Railroad Company were held to be *bona fide* purchasers. By § 4 of the act of March 3, 1887, the Railroad Company is given ninety days after demand within which to pay to the Government $1.25 per acre for the land erroneously patented to it and conveyed by it to *bona fide* purchasers.

The date from which interest can be claimed (if it can be claimed at all) would be after the expiration of three months or ninety days from the demand of the Secretary of the Interior, and in the absence of knowledge of that date that interest can be claimed only from the time of the filing of the bill in this cause.

There is no theory upon which interest can be recovered in this case from March 2, 1896. The statute does not provide that in any action brought by the Government to recover the minimum government price for lands erroneously patented to a railroad company and sold by it to *bona fide* purchasers interest should be recovered from the date of the act.

*Mr. Assistant Attorney General Knaebel*, with whom *Mr. W. W. Dyar* was on the brief, for the United States:

Interest was recoverable. In California, where this litigation was prosecuted, it is proper and lawful to allow interest for the use or forbearance or detention of money (Civ. Code, § 1915), and seven per cent, the rate assessed by the Circuit Court, is the lawful rate in that State in cases similar to the present.

In this country interest is the natural growth, or incident, of money, and bears the same relation to it that rent does to land. *Woerz* v. *Schumacher*, 161 N. Y. 534, 536; *Spalding* v. *Mason*, 161 U. S. 375, 395; *Stewart* v. *Barnes*, 153 U. S. 456, 462; 22 Cyc., p. 1473.

Whether interest should or should not be allowed often rests largely in the discretion of the court.

In this case, as observed by the court below, the Railroad Company has held in its possession and enjoyed the use of money which, *ex æquo et bono*, belonged to the United States. It would be indeed remarkable if a court of equity were to allow this company the free use of public funds, to which it had no right, which it was its duty not to use but to pay over, and the payment of which, contrary to its duty, it has resisted to this day. *National Bank* v. *Mechanics' Bank*, 94 U. S. 437, 439.

The right to maintain the suit does not rest upon the adjustment acts. They do not impose, and perhaps could not impose, any obligation upon the company to pay the

moneys herein demanded. The Railroad Company never had any right to the lands in question. By mutual mistake, however, of the Land Department and the company, patents were issued and accepted. Thereafter the company sold the lands to good-faith purchasers and received and retained the purchase moneys. In this situation the Government had the right, independently of any statute, to recover the moneys so received. *Southern Pacific R. R. Co.* v. *United States*, No. 1, 200 U. S. 341, 352.

Interest being recoverable on a demand of this character, there is nothing in the adjustment acts to take away the right thereto. *Stewart* v. *Barnes*, 153 U. S. 456, 462.

Interest was properly calculated from March 2, 1896, the date when the last of the adjustment acts became effective. By the decisions in 146 U. S. 570 and 615, it had been determined that the Railroad Company had no right to the lands in controversy and that by that act, and on its date, the titles of the *bona fide* purchasers were confirmed. As the lands then went to the purchasers (*United States* v. *Southern Pacific*, 168 U. S. 1, 52), the right to the purchase money, to the extent of $1.25 per acre, accrued to the United States. The company being under an equitable obligation to account to the United States, if it continued to hold the moneys, was bound to pay the legal rate of interest thereon.

The duty to account actually arose before the act of 1896 was passed. *United States* v. *Southern Pacific R. R. Co.*, 146 U. S. 570; *United States* v. *Colton Marble Co.*, 146 U. S. 615; *Southern Pacific R. R. Co.* v. *United States*, 168 U. S. 1.

It is no hardship for one who has had the use of money owing to another to be required to pay interest thereon from the time when the payment should have been made. *Spalding* v. *Mason*, 161 U. S. 375, 396.

The mere pendency of litigation does not suspend interest unless the money is paid into court. Neither does

the uncertainty of the outcome. *Potter* v. *Gardner*, 5 Pet. 718, 721.

If any demand were necessary, a demand was made by the institution of suit No. 184, in 1891. *Kaufman* v. *Tredway*, 195 U. S. 271.

The 90-day period mentioned in § 4 of the act of 1887 respects only the duty of the Attorney General to bring suit. The dates when the tracts were finally entered were all prior to March 2, 1896. It was then, obviously, that the claims were "confirmed" and the demands made. Most of the patents were also prior to that date, though a few were subsequent.

Mr. Chief Justice White delivered the opinion of the court.

The grant made to the Southern Pacific Railroad Company by § 23 of the act of Congress approved March 3, 1871, 16 Stat. 573, c. 122, overlapped a prior grant made to the Atlantic & Pacific Railroad Company by the act of July 27, 1866, 14 Stat. 292, c. 278. A forfeiture of the latter grant by the act of July 6, 1886, 24 Stat. 123, c. 637, was construed by the Land Department as causing the lands within the overlap to inure to the benefit of the Southern Pacific Company under its grant of 1871. In consequence, patents for a large quantity of land in California within the overlap were issued to the Southern Pacific Company.

The act of March 3, 1887, 24 Stat. 556, c. 376, entitled "An act to provide for the adjustment of land grants made by Congress to aid in the construction of railroads, and for the forfeiture of unearned lands, and for other purposes," among other things provided for the immediate adjustment of all railroad land grants made by Congress; and upon the completion of such adjustment, if it should appear that lands had been, from any cause, erroneously

certified or patented by the United States to or for the use
or benefit of any company claiming by, through, or under
grant from the United States to aid in the construction of
a railroad, it was made the duty of the Secretary of the
Interior to demand from such company a relinquishment
or reconveyance to the United States of all such lands,
whether within granted or indemnity limits; and, if such
company should neglect or fail to so reconvey such lands
to the United States within 90 days after such demand, it
should thereupon be the duty of the Attorney General to
commence and prosecute in the proper courts, the nec-
essary proceedings to cancel all patents, certificates, or
other evidences of title theretofore issued for such lands,
and to restore the title thereof to the United States. By
§ 4, citizens or persons who had declared their intention
to become citizens and who had purchased lands from the
railroad company in good faith, were authorized, on proof
of the fact after the adjustment of the grant, to acquire
patents from the United States. And it was among other
things further provided that after the issue of patent, de-
mand should be made for payment by the company, which
had disposed of such lands, of an amount equal to the
government price of similar lands; and in case of neglect
or refusal to make payment within ninety days thereafter,
the Attorney General was directed to cause a suit or suits
to be brought therefor.

Referring to suits brought under this act of 1887, in an
opinion delivered in *United States* v. *Southern Pacific R.
Co.*, 39 Fed. Rep. 132, the District Court said (p. 137):

"While in these cases but a comparatively small amount
of land is involved, the suits, it seems from a decision of
the Secretary of the Interior rendered June 23, 1888, and
reported in volume 6 of the decisions of the Department
of the Interior, page 816, were instituted by the Govern-
ment to test its right to a large amount of land similarly
situated. That decision was made upon an application

on the part of the Southern Pacific Railroad Company that it be called on, under the act of Congress of March 3, 1887, for a reconveyance of the lands which were held by the Land Department to have been improperly patented to said company, so that upon a refusal to reconvey, suits might be brought by the Government to set aside such patents, and that no further patents should be issued to said company for lands in the limits of the forfeited grant to the Atlantic & Pacific Railroad Company; and also that the then subsisting withdrawal of lands within the primary grant limit of the Southern Pacific Railroad, (branch line,) which are also within the granted and indemnity limits of the Atlantic & Pacific Railroad, should remain undisturbed until the rights of the Southern Pacific Company could be determined by suits before the courts."

The court then observed, in substance, that the Secretary of the Interior acted favorably upon the application so far as related to the bringing of the test suits and for that purpose had divided "the lands covered by the grants into three classes, to-wit: (1) Lands within the common primary limits of the grant to the Atlantic & Pacific Railroad Company and of the grant to the Southern Pacific Railroad Company, (branch line); (2) lands within the primary limits of the grant to the Southern Pacific Railroad Company, (branch line), and within the indemnity limits of the grant to the Atlantic & Pacific Railroad Company; (3) lands within the indemnity limits of the grant to the Southern Pacific Railroad Company, (branch line), and within the primary limits of the grant to the Atlantic & Pacific Railroad Company."

The suits just referred to would seem to have been the first of the test suits. They were brought in 1889 by the United States in the Circuit Court of the United States for the Southern District of California for the purpose of quieting the title of the United States, to various tracts of land situate within the overlapping limits,

aggregating about 5342 acres and claimed by the defend-
ants, viz: the Southern Pacific Company and other corpora-
tions and individuals asserting title under that company.
The first of the cases involved lands within the grant or
place limits and the second lands within the indemnity
limits.   No money recovery was prayed, other than costs
of suit.   The cases were ultimately decided in this court
on December 12, 1892.   *United States* v. *Southern Pacific
Railroad Company*, 146 U. S. 570; *United States* v. *Col-
ton Marble & Lime Company*, 146 U. S. 615.   A third
suit was begun by the United States in 1891, also to quiet
title, cancel patents, etc., in respect to lands within the
overlap.   The Railroad Company, and the trustees under
a mortgage, and also certain individuals and corporations
were made defendants.   The land affected by the suit
aggregated about 700,000 acres—61,939 acres of which
had theretofore been patented to the Railroad Company,
and applications were pending for patents as to 72,000
acres.   Although this suit sought to quiet the title of
the Government to lands claimed by numerous individual
defendants by purchase from or contract with the railroad
company, the decree entered in the Circuit Court provided
that it should not "affect any right which the defendants,
or any of them, other than the Southern Pacific Railroad
Company, now have or may hereafter acquire in, to, or
respecting any of the lands hereinbefore described in
virtue of the act of Congress entitled 'An act to provide
for the adjustment of land grants made by Congress to aid
in the construction of railroads, and for the forfeiture of un-
earned lands, and for other purposes,' approved March 3,
1887."

Despite the contention of the Railroad Company that
the decisions in the former cases reported in 146 U. S.,
settled merely the status of the particular lands involved
in that suit, it was held that those decisions were conclu-
sive as to all the lands within the overlap.   (168 U. S. 1).

Therein also, in an opinion delivered on October 18, 1897, after stating that the Circuit Court should have determined the rights of the defendants, other than the Railroad Company, in the lands in dispute, by virtue of the act of 1887, it was said (p. 66): "The effect of the decree is to leave undetermined the question whether the defendants who claim under the Southern Pacific Railroad Company are protected by that act or any other act of Congress." And the decree of affirmance rendered by this court was made subject "to the right of the government to proceed in the circuit court to a final decree as to those defendants."

While the last mentioned suit was pending in this court, Congress passed an act, approved February 12, 1896, 29 Stat. 6, c. 18, amendatory of the act of 1887, wherein it was further provided:

"That where such purchasers, their heirs or assigns, have paid only a portion of the purchase price to the company, which is less than the Government price of similar lands, they shall be required, before the delivery of patent for their lands, to pay to the Government a sum equal to the difference between the portion of the purchase price so paid and the Government price, and in such case the amount demanded from the company shall be the amount paid to it by such purchaser."

Congress also, on March 2, 1896, 29 Stat. 42, c. 39, passed another act relating to the same general subject as the act of March 3, 1887. The act of 1896, among other things, provided for the extension of time within which suits might be brought to vacate and annul land patents, and provided that no patent to any lands held by the *bona fide* purchaser should be vacated or annulled, but the right and title of such purchaser was by the act confirmed. In this connection it is to be borne in mind that the act of 1887 contemplated that the original erroneous patents or certifications should be annulled, and that new patents

should issue to *bona fide* purchasers from the railroad company, which should relate back to the date of the original certification of patent.

On the filing in the Circuit Court of the mandate of this court in the cause last referred to, the United States dismissed further proceedings as to certain defendants other than the Southern Pacific Railroad Company, and the trustees in the mortgage executed by that company, respecting certain tracts of land, and at the same time moved for a further decree against certain other defendants respecting particular tracts of land claimed by them. The decree of the Circuit Court (98 Fed. Rep. 46), determined as to various defendants claiming lands aggregating 43,315.67 acres for which no patents had been issued by the United States, that they were citizens of the United States and *bona fide* purchasers of the lands claimed by them "and entitled to make payments to the United States, and secure patents from the United States therefor, upon complying with the provisions of the act of March 3, 1887, in that behalf." As to other defendants claiming lands aggregating 9284.39 acres for which patents had been issued to the railroad company, it was adjudged that they were *bona fide* purchasers from and under the railroad, within the meaning of § 4 of the act of 1887, and within the meaning of the act of March 2, 1896. The title of these latter defendants and of their heirs, grantees and assigns to the lands claimed, was by the decree confirmed. The Government appealed the case to the Circuit Court of Appeals upon the contention that the court erred in adjudging that the defendants were *bona fide* purchasers within the meaning of the acts of Congress of 1887 and 1896, and on the affirmance by a decree of the Circuit Court of Appeals brought the case to this court where it was determined on January 27, 1902, by the opinion reported in 184 U. S. 49. And the record of the case so decided, introduced into the record before us by stipula-

tion, shows. that in that case the Government not only
prayed confirmation of the titles of the defendants found
to be *bona fide* purchasers within the meaning of the act
of. March 3, 1887, but also that the United States "may
have judgment against the defendant railroad company
for the sum of two dollars and fifty cents per acre for all
such lands, if any, which this honorable court may find
to be held by the defendants here as such *bona fide* pur-
chasers for value." The decree did not however provide
for a pecuniary recovery and it does not appear why the
Government failed to seek a decree in that respect.

On April 13, 1899, soon after the decision reported in
168 U. S. 1, an additional suit was commenced by the
United States against the Southern Pacific Company, in
regard to lands within the overlap, which was ultimately
decided by this court on February 19, 1906, in an opinion
reported in 200 U. S. 341. The defendants, in addition
to the Railroad Company and the trustees under certain
mortgages, were a number of individuals sued as repre-
sentatives of a class. The relief sought was the confirma-
tion of the titles of *bona fide* purchasers, the cancellation
of the patents for other lands, and the recovery of the
value of the lands conveyed by the Railroad Company
to *bona fide* purchasers, in accordance with the Adjust-
ment. Acts of 1887 and 1896. A money recovery was had
at the rate of $1.25 per acre, where the Railroad Company
realized that amount on the sale by it, and interest was
allowed at the rate of six per cent. per annum, from the
date of the decree. *Southern Pacific R. Co.* v. *United
States*, 133 Fed. Rep. 653, 654.

The United States filed its bill in this case on January 28,
1903,—about one year after the decision of this court in
the case reported in 184 U. S. 49,—invoking the aid of
equity as stated in the opinion below, "on the grounds
of discovery, accounting, the establishment of a trust
and the enforcement of a lien." The ultimate relief

sought, however, was a decree against the Railroad Company, under the acts of March 3, 1887 and March 2, 1896, for the statutory price of lands located within the overlap and described in two exhibits, A and B, which had been erroneously patented to the Railroad Company prior to the passage of the adjustment act of March 3, 1887, and which had been sold by the company to purchasers whose titles had been confirmed. Recovery of interest was not prayed. Exhibit A, embraced lands sold by the Railroad Company to *bona fide* purchasers who had applied to the Secretary of the Interior, under the provisions of the adjustment acts for and had received confirmation of their titles, to the respective lands purchased by them. The lands embraced in Exhibit B were all confirmed by the decree of the case reported in 184 U. S. 49, the purchasers being parties defendant in that suit. Some 1900 acres of the lands set out in Exhibit A were the subject of the suit reported in 146 U. S. 570, although the purchasers were not joined, and the remaining lands in that exhibit formed part of the lands which were the subject of the suit reported in 186 U. S. 49, the purchasers being parties defendants in that suit. A final decree was entered against the company (157 Fed. Rep. 96), for the principal sum of $40,124.30, together with interest thereon at the rate of seven per cent. per annum from March 2, 1896. This decree was affirmed by the Circuit Court of Appeals (186 Fed. Rep. 737), whereupon the Railroad Company took this appeal.

Presumably in view of the decision of this court in the case reported in 200 U. S. 341, the only assignment of error urged at bar concerns the award of interest, the main contention on behalf of the Railroad Company being that the statutes of 1887 and 1896, correctly construed, negative any right to interest, and in any event the date fixed by the court below from which interest was to run was erroneous.

It may not be doubted that testing the right to recover interest exclusively by the face of the Adjustment Acts such right would. not obtain, since those acts expressly provide for the payment of a specified amount, the minimum statutory price of the land, without any expressions tending to support the conclusion that liability for interest was contemplated. On this subject, it was said in 200 U. S. at page 353:

"The acts of Congress really inure to the benefit of the Railroad Company and restrict the right of the Government, for they provide that the recovery shall in no case be more than the minimum Government price. In other words, the Government asks only its minimum price for public land, no matter what the value of the tracts or the amounts received by the company may be."

But it is unnecessary to further pursue this matter, since it is conceded by the Government that the right to recover interest here asserted depends not upon an express liability imposed by the adjustment acts but upon general principles of law as applied to the facts of the case. Primarily the argument causes the liability for interest to depend upon the fact that the Railroad Company received from those to whom it had sold the lands, the price thereof, of which moneys it has since had the possession, and therefore it should be condemned to pay interest from the time the money was received. As already pointed out, however, this theory conflicts. with the plain purpose of the adjustment acts which was simply to provide for the settlement of a situation which had arisen by a common mistake, the Government taking back the land which had been patented and which the Railroad Company had not conveyed and confirming to *bona fide* purchasers the titles to lands which had been conveyed to them by purchase from the railroad, the Government to receive for such lands, merely the minimum statutory price, a provision which excludes the conception that it was conceived that

a liability was created, based upon an accounting between the Government and the railroads of benefits and profits. It is, however, insisted that upon principles of equity interest should be allowed for the following reasons: a. In view of the definite nature and liquidated character of the obligation of the railroad company to pay as manifested by the terms of the acts of 1887 and 1896, and b, as the result of the legal proceedings taken by the United States to enforce liability under the adjustment acts and the course of judicial decision thereon, all of which we have previously stated. The subjects are so interblended that we consider them together.

The interest, as we have already stated, was allowed below, from March 2, 1896, the date of the last adjustment act, as to which it is insisted in argument as follows:

"Then, certainly, if not before, the United States became the equitable assignee *pro tanto* of the purchasers' rights to recover what they had paid to the company through an innocent mistake; and then certainly, if not before, the company came under an equitable obligation to account to the United States. If it continued to hold the moneys beyond that time, it would be only reasonable and equitable to require it to pay the legal rate of interest."

But as we have pointed out, both the Adjustment Acts of 1887 and 1896 provided for no recovery of interest and in the bill in the case before us which is expressly based upon those acts there is no prayer for interest. It certainly cannot be admitted on the one hand, as has been done, that the act did not provide for interest, and yet it be on the other hand asserted that the act, intrinsically considered, imposed the liability for interest from the date of its passage. Indeed, both the adjustment acts, as we have already pointed out, were long since treated by this court as contemplating action by the Government to ascertain and fix the liability which arose from their enactment.

Now the history we have given of the various suits concerning the lands within the overlap shows that the case reported in 168 U. S. 1 and 184 U. S. 49, involved the question of who were *bona fide* purchasers of the larger part of the lands the statutory price of which is sought to be recovered in this suit, and that the United States appealed the case to this court, contesting the correctness of the holding of the courts below, as to defendants being *bona fide* purchasers, a question whose decision was essential to fix a pecuniary liability upon the company, which question was not and could not have been determined until the decision of this court on January 27, 1902.

The very foundation of the liability having thus been in litigation by the action of the Government, there is no reason for holding that, until that controversy was determined the pecuniary liability of the railroad company was so liquidated as to justify the awarding of interest. The question, therefore, is limited to determining whether the effect of the decree in the case decided in 1902, was to so fix the liability as to justify the awarding of interest from that date. We think not, for the following reason: In the suit which was terminated by the decree entered in 1902, the Government asked that in cases where the purchasers from the Railroad Company were found to have acted in good faith, within the meaning of the adjustment acts, it be decreed entitled to recover $2.50 per acre, instead of $1.25 allowed by the adjustment acts. While the decree of 1902 determined who were *bona fide* purchasers, contrary to the contention of the Government, it did not pretend to fix the resulting pecuniary liability or embrace affirmative language conclusively protecting against the enlarged claim which the Government made in the suit. Under these circumstances, we think it cannot be said that such a conclusive liquidation arose or was deemed by the Government to have arisen as to justify an award of interest. This conclusion is also fortified by the fact that

when subsequently, in 200 U. S. the Government obtained a decree for the price of similar land sold to *bona fide* purchasers, interest was awarded to it only from the date of the decree without apparently objection being made on the part of the United States. This is further fortified by the fact that in the bill in this suit, filed after the decision in 1902, no demand was made for interest.

Looking comprehensively at the whole situation, especially the decision rendered in 1902, considering that the withdrawal by the United States of the previously asserted right to greater compensation than the minimum statutory price, which was a necessary consequence of the filing of its bill in this case, of the averment of demand which the bill contained and the absence of any objection on the part of the defendant company because of prematurity, we think it is just to say that the liability for interest upon the statutory price arose at the date of the commencement of the suit and no sooner; and, therefore, that error was committed both in the trial court and in the Circuit Court of Appeals in not confining the commencement of the running of interest to that date.

It follows that the decree of the Circuit Court of Appeals to the extent that it affirmed the judgment allowing interest prior to January 28, 1903, be and the same is modified, and as so modified is affirmed and the cause is remanded to the District Court with instructions to enter a decree conformably to this opinion.

*Modified and affirmed.*